# Order

**Michigan Supreme Court**
**Lansing, Michigan**

June 12, 2009

136900

Marilyn Kelly,
Chief Justice

Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway,
Justices

MARC CHAMBERS,
        Plaintiff-Appellee,

v

        SC: 136900
        COA: 277900
        Wayne CC: 05-531729-NO

WAYNE COUNTY AIRPORT AUTHORITY,
        Defendant,
        Cross-Plaintiff-Appellant,
and

KNIGHT FACILITIES MANAGEMENT, INC.,
        Defendant,
        Cross-Defendant.

_____/

On order of the Court, the motion for reconsideration of this Court's December 19, 2008 order is considered, and it is GRANTED. We VACATE our order dated December 19, 2008. On reconsideration, the application for leave to appeal the June 5, 2008 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

CORRIGAN, J. (*dissenting*).

In this case arising from a slip and fall in a puddle of water at the Detroit Metropolitan Airport, I dissent from the order granting plaintiff's motion for reconsideration. This Court did not err in its December 18, 2008, order reversing the judgment of the Court of Appeals for the reasons stated in the Court of Appeals dissenting opinion. Defendant Wayne County Airport Authority is entitled to summary disposition because plaintiff failed to serve on defendant a notice of the occurrence of the injury and the nature of the defect within 120 days of his injury. An injured person must serve such a notice as a condition to recovery under the public building exception to governmental immunity, MCL 691.1406.

By granting reconsideration and reinstating the Court of Appeals decision, the majority leaves intact a complete distortion of the statutory notice provision. Under the decision upheld today, a governmental agency in Michigan now must divine the intentions of any injured or potentially injured person and then notify itself that the person may file a lawsuit. Any routine police or incident report that the government itself creates may now be deemed a notice to the government of a potential lawsuit. This decision subverts our Legislature's clearly expressed mandate that "the injured person" must serve a notice on the government as a "condition" to recovery. As a result, governmental agencies in Michigan will likely be forced to devote limited public resources to comply with a new, judicially invented duty in thousands of potential lawsuits every year.

The notice provision of the public building exception, MCL 691.1406, provides:

> As a *condition* to any recovery for injuries sustained by reason of any dangerous or defective public building, *the injured person*, within 120 days from the time the injury occurred, *shall serve a notice on the responsible governmental agency of the occurrence of the injury and the defect*. The notice shall specify the exact location and nature of the defect, the injury sustained and the names of the witnesses known at the time by the claimant.

> The notice may be served upon any individual, either personally, or by certified mail, return receipt requested, who may lawfully be served with civil process directed against the responsible governmental agency, anything to the contrary in the charter of any municipal corporation notwithstanding. [Emphasis added.]

In *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197 (2007), the plaintiff filed a written notice after 140 days, thus failing to meet the 120-day deadline of the notice provision in the highway exception to governmental immunity, MCL 691.1404(1). This Court rejected earlier caselaw[1] that had assumed notice provisions are unconstitutional if they do not contain a prejudice requirement. *Rowland*, *supra* at 210. This Court agreed with Justice Riley's dissent in *Brown v Manistee Co Rd Comm*, 452 Mich 354 (1996), that the notice provision is social legislation that has a rational basis. "'Notice provisions rationally and reasonably provide the state with the opportunity to investigate and evaluate a claim.'" *Rowland*, *supra,* at 210, quoting *Brown, supra* at 370 (Riley, J., dissenting). Other reasons for requiring notice include "allowing time for creating reserves for the [Motor Vehicle Accident Claims] Fund, reducing the uncertainty of the extent of future demands, or even to force the claimant to an early choice regarding how

---

[1] See *Hobbs v Dep't of State Hwys*, 398 Mich 90, 96 (1976), and *Brown v Manistee Co Rd Comm*, 452 Mich 354, 356-357 (1996).

to proceed." *Rowland*, *supra* at 212, citing the dissent in the consolidated cases of *Lisee v Secretary of State* and *Howell v Lazaruk*, 388 Mich 32 (1972). All these reasons provided a rational basis that assured the constitutionality of the notice provision. *Rowland*, *supra* at 212.

The notice provision at issue here is substantively identical to the provision in *Rowland*. It requires "the injured person" to serve a notice on the responsible governmental agency "within 120 days from the time the injury occurred." Plaintiff did not serve any notice. Rather, plaintiff claims, and the Court of Appeals held, that an internal incident report, a report that defendant itself generated, was sufficient to establish that plaintiff served a notice.

But it is beyond dispute that plaintiff, "the injured person," did not serve this internal incident report on an individual who may lawfully be served with civil process directed against defendant. An officer for defendant simply prepared the report in the course of his duties and submitted the report to defendant's operations agent. Plaintiff presented no evidence that either of these employees was authorized to accept service on behalf of defendant.[2]

Nor did plaintiff's informal oral statement to defendant's officer following his fall suffice to establish the statutorily required notice. MCL 691.1406 requires the injured person to serve "*a* notice" on the governmental agency. The term "*a* notice" plainly contemplates a written document. Moreover, the statute provides that "the notice may be served upon any individual, either personally, or by certified mail, return receipt

---

[2] Indeed, these lower level bureaucratic employees are not the individuals authorized to accept service of civil process on behalf of defendant under MCL 600.1925(8):

> Service of process upon public, municipal, quasi-municipal, or governmental corporations, unincorporated boards, or public bodies, may be made by leaving a summons and a copy of the complaint with
>
> * * *
>
> (8) *the president, chairman, secretary, manager, or clerk*, in the case of any other public body organized or existing under the constitution or any law of this state, when by statute no other method of service is specially provided.

> The service of process may be made on *any officer having substantially the same duties as those named or described irrespective of their titles*. In any case, service may be made by leaving a summons and a copy of the complaint with a person in charge of the office of any of the above-described officers upon whom service may be made and sending by registered mail a summons and a copy of the complaint addressed to such officer at his office.

requested, who may lawfully be served with civil process directed against the responsible governmental agency . . . ." An informal oral statement obviously cannot be "served" personally or by certified mail. Black's Law Dictionary (6th ed) defines "service" in practice as:

> The exhibition or delivery of a writ, summons and complaint, criminal summons, notice, order, etc., by an authorized person, to a person who is thereby officially notified of some action or proceeding in which he is concerned, and is thereby advised or warned of some action or step which he is commanded to take or to forbear.

This definition requires the delivery of a written document to the person authorized to accept service to provide the requisite official notice.

Further, the requirement of MCL 691.1406 that a notice be served on one "who may lawfully be served with *civil process*" on behalf of the governmental agency is incompatible with informal oral notice. The service of civil process is the service of formal written documents in order to commence suit.[3] It follows that a notice must also be a formal written document sufficient to make the governmental agency aware of the potentially impending lawsuit. The judiciary should not eviscerate the legal definition of the terms employed by the Legislature to allow completely informal oral statements to form the requisite service of notice.

Plaintiff's failure to serve a notice within 120 days bars his recovery. As we held in *Rowland*, service of a notice is mandatory, and MCL 691.1406 plainly says that service of a notice is "a condition to any recovery for injuries sustained by reason of any dangerous or defective public building." Plaintiff did not satisfy that condition, and he thus may not recover for his injuries under the public building exception.

The failure of the Court of Appeals to enforce the statutory notice requirement, a failure that the majority of this Court now leaves intact, entirely subverts the proper functioning of a large governmental organization such as the defendant airport authority. MCL 691.1406, by requiring an injured person to serve a notice on an individual who may legally be served with process against the governmental agency, ensures that the notice will be directed to appropriate personnel to evaluate the claim and prepare for potential litigation. By contrast, a routine internal incident report may not alert the governmental agency's risk managers that the injured person is contemplating a potential claim.

---

[3] MCR 2.102.

Nor would the Court of Appeals reasoning be limited to cases arising under the public building exception. If an internal incident report is now considered "a notice" from "the injured person" under the public building exception, then it is fair to conclude that a routine police report of a seemingly minor traffic accident or of a pedestrian trip and fall could also constitute a notice for the purposes of the highway exception, MCL 691.1404(1).

The ramifications of this new, judicially invented duty of self-notification should not be underestimated. Governmental agencies in Michigan are now tantamount to agents for thousands of persons every year who might, one day, claim to be injured after tripping, slipping, falling, or stumbling in a public building or on a public road or sidewalk, or after a minor automobile accident. This new duty will arise whenever a routine incident or police report has been prepared. Governmental agencies may have no choice but to use limited public funds to hire additional staff to comb through thousands of reports of seemingly minor incidents to discern whether each report is actually "a notice" from "the injured person" that requires preparation for a possible lawsuit. Or perhaps, to protect against the increased risk of litigation and the resulting depletion of scarce public funds, governmental agencies will simply decline to prepare police and incident reports on a regular basis, thereby depriving the public of the obvious benefits that such reports serve.

Finally, the new majority's failure to abide by *Rowland* continues a growing and troubling trend. Rather than forthrightly overruling this decision, it is increasingly becoming the practice of this Court to simply ignore precedents with which it disagrees. See, e.g., *VanSlembrouck v Halperin*, 483 Mich ___ (2009), entered April 24, 2009 (Docket No. 135893), where the new majority ignored *Vega v Lakeland Hospitals*, 479 Mich 243, 244 (2007); *Hardacre v Saginaw Vascular Services*, 483 Mich ___ (2009), entered March 27, 2009 (Docket No. 135706), where it failed to follow *Boodt v Borgess Med Ctr*, 481 Mich 558 (2008); *Sazima v Shepherd Bar & Restaurant*, 483 Mich ___ (2009), entered April 3, 2009 (Docket No. 136940), where it failed to follow *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606 (1940), and *Camburn v Northwest School Dist*, 459 Mich 471 (1999); and *Juarez v Holbrook*, 483 Mich ___ (2009), entered April 24, 2009 (Docket No. 137358), where it failed to follow *Smith v Khouri*, 481 Mich 519 (2008).

Accordingly, I would deny the motion for reconsideration. Plaintiff, "the injured person," did not serve "a notice" of the defect and his injury on the responsible governmental agency within 120 days and thus did not satisfy the "condition" for recovery prescribed in MCL 691.1406.

YOUNG and MARKMAN, JJ., join the statement of CORRIGAN, J.

YOUNG, J. (*dissenting*).

I fully concur with the dissenting statement of Justice Corrigan. I write separately to note that the new majority's decision in this case reflects this Court's more recent hostility to the notion of governmental immunity and any other *legislatively* imposed measure that reduces the volume of civil litigation in this state. This decision hearkens back to our predecessors' refusal to recognize the legislative prerogative to regulate when and how the state may be sued.[4]

Since its inception, the concept of sovereign immunity has given the state government and its agencies the broadest possible protection from civil suit. The concept of sovereign, or governmental, immunity dates back to English common law. It is based on the premise that the sovereign *is* the law and, therefore, cannot be sued as of right in its own courts.[5] Rather, the sovereign must "expressly permit[] a suit against it."[6] Consistent with that concept, this Court, until the 1970s, historically held that the state was entitled to place conditions on the suits it permitted against itself.[7] For at least 70 years, this Court strictly upheld the plain language of such statutes that required prior notice to the government agency as a precondition for suit.[8]

Despite this long history respecting governmental immunity, the modern Court has eschewed legislatively imposed conditions on lawsuits and eroded the government's innate immunity. Beginning in 1970, justices of this Court began to question the due process implications of treating plaintiffs who sue a governmental defendant differently from those who sue a private entity.[9] Subsequently, the Court held that the differentiation between suits against private and governmental defendants violated the equal protection rights of plaintiffs.[10]

The Court eventually acknowledged the intellectual incoherence of its constitutional assault on governmental immunity and held that a notice provision *might*

---

[4] See Young, *A judicial traditionalist confronts Justice Brennan's school of judicial philosophy*, 33 Okla City U L R 263, 269-271 (2008).

[5] *Odom v Wayne Co*, 482 Mich 459, 477 (2008), citing Prosser, Torts (4th ed), § 131, p 970, and 4 Restatement Torts, 2d ch 45A, p 394.

[6] *Id.*, citing Prosser, *supra*, § 131, pp 971, 975-976, and Restatement, *supra*, § 895D and comment a, pp 399-401. See also Young, *supra* at 269-270 and n 21.

[7] *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 212 (2007), quoting *Moulter v Grand Rapids*, 155 Mich 165, 168-169 (1908).

[8] *Id.* at 205-206 (citing caselaw dating from 1897 through 1969).

[9] *Id.* at 206, citing *Grubaugh v City of St Johns*, 384 Mich 165 (1970).

[10] *Id.* at 206-207, citing *Reich v State Hwy Dep't*, 386 Mich 617 (1972).

be constitutionally valid if it "serve[s] a permissible purpose, such as to prevent prejudice . . . ."[11] The Court held that the only possible *legitimate* purpose that a notice provision could serve is to prevent prejudice against the governmental defendant. Accordingly, in the 1970s, the Court judicially rewrote notice provisions in governmental immunity statutes by engrafting a nonexistent "actual prejudice" element.[12] The Court upheld this judicially created element in governmental immunity notice provisions through 1996.[13] Conceding that the "actual prejudice" element was not in the plain language of such statutory notice provisions, the Court held that the Legislature had "acquiesced" in this interpretation because it had not amended the governmental immunity statutes to "overrule" the judicially engrafted element.[14]

The earlier Court's ever evolving legal rationale to limit governmental immunity notice provisions evinced a policy-driven desire to promote suits against government defendants. The language of these provisions is clear and unambiguous; yet, the Court went to great lengths "to justify and enforce its hostility" toward the concept of governmental immunity and to supplant its policy choice for that of the Legislature.[15]

However, as this Court has more recently reiterated, governmental immunity legislation is constitutionally valid because it is reasonably related to several legitimate

---

[11] *Id.* at 208, citing *Carver v McKearn*, 390 Mich 96 (1976).

[12] *Hobbs v Dep't of State Hwys*, 398 Mich 90 (1976); *Carver*, *supra*.

[13] *Brown v Manistee Co Rd Comm*, 452 Mich 354 (1996).

[14] *Id.* at 366-368 and n 18. As we emphatically held in *Donajkowski v Alpena Power Co*, 460 Mich 243, 261 (1999), legislative acquiescence "is a highly disfavored doctrine of statutory construction; sound principles of statutory construction require that Michigan courts determine the Legislature's intent from its *words*, not from its silence." (Emphasis in original.)

In any event, *Brown*'s conclusion based on the theory of legislative acquiescence is legally infirm. *Brown* asserted that the actual prejudice element was only engrafted onto the governmental immunity notice provision because the Court "could not posit another purpose for the notice provision . . . ." *Brown*, *supra* at 367 n 18. Accordingly, the Legislature could have subsequently clarified the statute by "further articulat[ing] the notice provision's purpose and possibly [creating] a presumption of prejudice" from the lack of timely notice. *Id.* As aptly noted by the dissent in *Brown*, however, the Legislature was powerless to remove the judicially created actual prejudice element from the statute because *Hobbs* held that this element "saved the statute from constitutional infirmity." *Brown*, *supra* at 373 (Riley, J., dissenting).

[15] Young, *supra* at 271.

government interests.[16]  Notice provisions afford the government "'the opportunity to investigate and evaluate a claim.'"[17]   They protect the government's publicly funded treasury from "'unjust raids . . . by unscrupulous prosecution of trumped-up, exaggerated, and stale claims, by requiring a claimant to give definite information . . . at a time when the matter is fresh, conditions unchanged, and witnesses thereto and to the accident within reach.'"[18]   More broadly, notice provisions are constitutional because the Legislature created them as "quid pro quo for its relinquishment of immunity" in relation to civil suits permitted under the exceptions to governmental immunity.[19]

Despite the various well-reasoned purposes notice provisions serve, justices of the modern Court have boldly stated:

> [W]e acknowledge frankly that statutes which limit access to the courts by people seeking redress for wrongs *are not looked upon with favor by us*.  We acquiesce in the enforcement of statutes of limitation *when we are not persuaded that they unduly restrict such access*, but we *look askance at devices such as notice requirements* which have the effect of shortening the period of time set forth in such statutes.[20]

Although commendable for its blunt honesty, such a statement undermines our tripartite system of government and is acutely repugnant to the right of the people to express their views through their elected representatives in the Legislature.  This is rule by a judicial oligarchy.  It is completely contrary to our judicial function.  Reversion to overruled caselaw that proudly usurps the legislative function in this fashion is exactly what the new majority has accomplished by ignoring *Rowland* and engrafting a "substantial compliance" exception onto the notice provision in the public building exception to governmental immunity.[21]

The new majority's reversion is not surprising given its members' past expressions of distaste for governmental immunity principles.  For example, members of the new majority have repudiated the concept that immunity is a characteristic of government and would     foist     the     duty     of     raising     immunity     onto     the     government     as     an

---

[16] *Rowland, supra* at 212.  Moreover, we must find a statute constitutional if "any state of facts either known or which could reasonably be assumed affords support" for the holding.  *Id.* (quotation marks and citations omitted).

[17] *Id.* at 211, quoting *Brown*, *supra* at 370 (Riley, J., dissenting).

[18] *Id.*, quoting *Ridgeway v Escanaba*, 154 Mich 68, 72-73 (1908).

[19] *Brown*, *supra* at 372 (Riley, J., dissenting).

[20] *Carver*, *supra* at 99 (emphasis added), quoted with approval in *Hobbs*, *supra* at 96.

[21] MCL 691.1406.

affirmative defense.[22]  The members of the new majority have not limited their disapproval of legislative limitations on causes of action to those against the government. They have challenged statutes of limitations, notice and tolling provisions, and express limitations in the Legislature's defined parameters on causes of action.[23]

As noted by Justice Corrigan, the exercise *sub silentio* of judicial power will reign supreme in the new order the new majority desires to create.

For these reasons and those stated in Justice Corrigan's statement, I dissent from the new majority's decision to vacate our prior, precedentially supported order to reverse the Court of Appeals judgment and to simply deny leave to appeal without explanation of the majority's failure to follow *Rowland*.

CORRIGAN and MARKMAN, JJ., join the statement of YOUNG, J.

_____

[22] See, e.g., *Lash v Traverse City*, 479 Mich 180, 201 (2007) (Kelly, J., dissenting in part) (arguing that governmental immunity is the exception rather than the rule and the governmental defendant must raise and prove immunity as an affirmative defense); *Costa v Community Emergency Medical Services, Inc*, 475 Mich 403, 416-420 (2006) (Kelly, J., dissenting) (arguing that governmental immunity is an affirmative defense and, therefore, it does not contradict the purpose of the doctrine to require a governmental defendant to file an affidavit of meritorious defense, MCL 600.2912e, in a medical malpractice case); *Mack v Detroit*, 467 Mich 186, 220-222 (2002) (Cavanagh, J., dissenting) (expressing his preference for recent caselaw over the centuries-old common-law concept of governmental immunity in arguing that the governmental defendant must plead immunity as an affirmative defense).

[23] See, e.g., *Trentadue v Buckler Automatic Lawn Sprinkler Co*, 479 Mich 378, 420-425 (2007) (Weaver, J., dissenting) (arguing that this Court should follow the common-law discovery rule regarding the accrual date of a claim for the purposes of a statute of limitations without regard to the subsequent enactment of a highly comprehensive statutory scheme meant to preempt the common law); *Roberts v Mecosta Co Gen Hosp (After Remand)*, 470 Mich 679, 709 (2004) (Kelly, J., dissenting) (suggesting we adopt a substantial compliance standard for notices of intent in medical malpractice actions "if they serve the object of the statute and do not prejudice the defendant"); *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 50-54 (2002) (Kelly, J., dissenting) (contending that the standards of care for a medical malpractice action under MCL 600.2912a should apply to neonatal nurses, even though those individuals are not engaged in the practice of medicine as defined by the statute); *McDougall v Schanz*, 461 Mich 15, 52-55 (1999) (Cavanagh, J., dissenting) (arguing that statutory standards or requirements for expert witness qualifications in medical malpractice actions do not affect the substance of the cause of action and, therefore, represent a legislative usurpation of judicial power).



I, Corbin R. Davis, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 12, 2009

_____
Clerk