**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Marilyn Kelly

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman
Diane M. Hathaway

FILED JULY 31, 2009

GARY HENRY and ALL OTHERS SIMILARLY SITUATED,

Plaintiffs-Appellees,

v

No. 136298

DOW CHEMICAL COMPANY,

Defendant-Appellant.

BEFORE THE ENTIRE BENCH

WEAVER, J.

Class action litigation in Michigan is governed by the Michigan Court Rules, and MCR 3.501(A)(1) specifically sets forth the prerequisites for class certification. These prerequisites are often referred to as numerosity, commonality, typicality, adequacy, and superiority.[1]

In this case we consider the proper analysis a court must conduct when determining whether the prerequisites for class certification have been met. Additionally, we consider whether this particular class of plaintiffs was erroneously certified by the circuit court.

---

[1] See *infra* at 11-12 for the complete court rule containing the prerequisites for class certification.

In deciding these questions, we conclude that a party seeking class certification is required to provide the certifying court with information sufficient to establish that each prerequisite for class certification in MCR 3.501(A)(1) is in fact satisfied. A court should avoid making determinations on the merits of the underlying claims at the class certification stage of the proceedings.

Additionally, we remand this case to the circuit court for clarification of its analysis of MCR 3.501(A)(1)(c) and (d) in light of our opinion today.

## I. FACTS AND PROCEDURAL BACKROUND

This case arises from allegations that defendant, Dow Chemical Company, negligently released dioxin, a synthetic chemical that is potentially hazardous to human health, from its Midland plant into the Tittabawassee River. The representative plaintiffs allege that they, along with the proposed class members, have incurred property damage caused by the dioxin contamination. Plaintiffs' claims are based on theories of negligence and nuisance. This dispute concerns the circuit court's decision to grant plaintiffs' motion for class certification.

At the outset, we note that Dow's alleged dioxin contamination of the Tittabawassee River has been the subject of a prior appeal in this Court (*Henry I*).[2] In *Henry I*, we addressed plaintiffs' allegations that dioxin negligently released by Dow caused a risk of harm to their health.[3] In *Henry I*, we articulated the basic

---

[2] *Henry v Dow Chem Co*, 473 Mich 63; 701 NW2d 684 (2005) (*Henry I*).

[3] *Id*. at 67.

facts and procedural history surrounding the alleged dioxin contamination as follows:

Defendant, The Dow Chemical Company, has maintained a plant on the banks of the Tittabawassee River in Midland, Michigan, for over a century. The plant has produced a host of products, including, to name only a few, "styrene, butadiene, picric acid, mustard gas, Saran Wrap, Styrofoam, Agent Orange, and various pesticides including Chloropyrifos, Dursban and 2, 4, 5-trichlorophenol." Michigan Department of Community Health, Division of Environmental and Occupational Epidemiology, *Pilot Exposure Investigation: Dioxin Exposure in Adults Living in the Tittabawassee River Flood Plain, Saginaw County, Michigan*, May 25, 2004, p 4.

According to plaintiffs and published reports from the MDEQ, defendant's operations in Midland have had a deleterious effect on the local environment. In 2000, General Motors Corporation was testing soil samples in an area near the Tittabawassee River and the Saginaw River when it discovered the presence of dioxin, a hazardous chemical believed to cause a variety of health problems such as cancer, liver disease, and birth defects.

By spring 2001, the MDEQ had confirmed the presence of dioxin in the soil of the Tittabawassee flood plain. Further investigation by the MDEQ indicated that defendant's Midland plant was the likely source of the dioxin. Michigan Department of Environmental Quality, Remediation and Redevelopment Division, *Final Report, Phase II Tittabawassee/Saginaw River Dioxin Flood Plain Sampling Study*, June 2003, p 42 (identifying Dow's Midland plant as the "principal source of dioxin contamination in the Tittabawassee River sediments and the Tittabawassee River flood plain soils").

In March 2003, plaintiffs moved for certification of two classes in the Saginaw Circuit Court. The first class was composed of individuals who owned property in the flood plain of the Tittabawassee River and who alleged that their properties had declined in value because of the dioxin contamination. The second group consisted of individuals who have resided in the Tittabawassee flood plain area at some point since 1984 and who seek a court-supervised program of medical monitoring for the

possible negative health effects of dioxin discharged from Dow's Midland plant. This latter class consists of 173 plaintiffs and, by defendant's estimation, "thousands" of putative members.

Defendant moved under MCR 2.116(C)(8) for summary disposition of plaintiffs' medical monitoring claim. The Saginaw Circuit Court denied this motion, and denied defendant's subsequent motions for reconsideration and for a stay of proceedings.

After the Court of Appeals denied defendant's motion for peremptory reversal and emergency application for leave to appeal, the defendant sought emergency leave to appeal in this Court. Discovery and other preliminary proceedings on plaintiffs' motion for class certification continued in the Saginaw Circuit Court until, on June 3, 2004, we stayed the proceedings below and granted defendant's application for leave to appeal.[4]

Given that plaintiffs did not allege a *present* medical injury, we concluded that plaintiffs did not assert a viable negligence claim recognized by Michigan common law.[5] Therefore, we reversed the circuit court's denial of Dow's motion for summary disposition with regard to plaintiffs' medical monitoring claims and remanded the matter to the circuit court for entry of an order of summary disposition accordingly.[6]

On remand, the circuit court addressed plaintiffs' motion for class certification with respect to the remaining claims of negligence and nuisance, which are the subjects of the present appeal. The current proposed class consists of persons owning real property within the 100-year flood plain of the

---

[4] *Id*. at 69-70.

[5] *Id*. at 81.

[6] *Id*. at 102.

Tittabawassee River on February 1, 2002.[7] The proposed class is estimated by plaintiffs to consist of approximately 2,000 persons.

The circuit court certified the proposed class, concluding that the prerequisites for class certification in MCR 3.501(A)(1) were met. Specifically, the circuit court ruled that joinder of approximately 2,000 persons is impracticable, the question of Dow's allegedly negligent pollution is common to all plaintiffs, the mere fact that damages may be individualized is not sufficient to defeat class certification, the plaintiffs' property claims arise from the same alleged actions of Dow, the class members share common legal and remedial theories, and the representative plaintiffs are able to fairly and adequately protect the interests of the proposed class members.

Additionally, the circuit court determined that maintenance of this suit as a class action is the superior method of adjudication given that denial of class

---

[7] Plaintiffs define the scope of the 100-year flood plain of the Tittabawassee River as the geographic area bounded on the west and south by River Road and Stroebel Road, including areas on the west and south side of those roads, and bounded on the east and north by Midland Road, St. Andrews Road, and Michigan Avenue, including areas on the east and north side of those roads.

The Michigan Department of Environmental Quality provides the following information regarding "floodplains" on its website:

> A river, stream, lake, or drain may on occasion overflow [its] banks and inundate adjacent land areas. The land that is inundated by water is defined as a floodplain. In Michigan, and nationally, the term floodplain has come to mean the land area that will be inundated by the overflow of water resulting from a 100-year flood (a flood which has a 1% chance of occurring any given year). <http://www.michigan.gov/deq/0,1607,7-135-3313_3684_3725---,00.html> (last accessed July 14, 2009).

5

certification may result in up to 2,000 individual suits against Dow. The circuit court further reasoned that a class action would be manageable here because the class members all reside in the allegedly polluted area and similar evidence would be required to establish Dow's negligence with respect to each class member.

The Court of Appeals granted Dow's application for leave to appeal from the circuit court order granting class certification. In a divided decision, the Court of Appeals affirmed the class certification with regard to the issue of Dow's liability only.[8]

The lead opinion concluded that class certification on *all* issues, including the issue of damages, is proper.[9] The lead opinion relied on the MDEQ findings submitted by plaintiffs and held that, in light of the MDEQ's findings and the fact

---

[8] *Henry v Dow Chem Co*, unpublished opinion per curiam of the Court of Appeals, issued January 24, 2008 (Docket No. 266433).

[9] The lead opinion reviewed the order for clear error and concluded that because neither party requested an evidentiary hearing in the circuit court, there were no factual findings to review. *Henry, supra* at 7-8 (opinion of Fort Hood, J.). Additionally, the lead opinion concluded that the circuit court properly relied on caselaw in support of its decision to grant certification. *Id*. at 8. The lead opinion referred to two published Court of Appeals opinions in which class certification was deemed inappropriate: *Zine v Chrysler Corp*, 236 Mich App 261; 600 NW2d 384 (1999), and *Tinman v Blue Cross & Blue Shield*, 264 Mich App 546; 692 NW2d 58 (2004). After reviewing those cases, the lead opinion concluded that both cases required more of an individualized inquiry than in the present case and, therefore, the present case is factually distinguishable. *Henry, supra* at 8-11 (opinion of Fort Hood, J.).

that the parties presented contradicting theories of the dioxin contamination, the circuit court did not clearly err.[10]

A partial concurrence to and partial dissent from the lead Court of Appeals opinion agreed that the circuit court did not err in certifying the class with respect to Dow's liability, but concluded that individualized questions prevailed with respect to the issue of damages. Thus, the partial concurrence and partial dissent reasoned that a bifurcated proceeding would be the most appropriate manner of adjudication.[11]

---

[10] The MDEQ's findings are set forth in a "declaration" made by the MDEQ. The declaration indicates that some of the levels of dioxin initially discovered near the Tittabawassee River were as high as 2,200 parts per trillion, which is a concentration 25 times that of the residential direct contact criterion. The declaration further explains that the dioxin was likely transported downstream onto the flood plain during flood events.

The declaration indicates that the MDEQ hired a survey firm to develop a flood plain map and establish the 100-year flood plain at issue. On the basis of the survey results, the MDEQ issued an information bulletin to 2,500 individuals explaining the potential hazards of dioxin exposure and the MDEQ's need for further investigation.

According to the declaration, further investigations confirmed the presence of excessive dioxin concentrations. This discovery permitted the MDEQ to classify each contaminated property as a "facility." The effect of the "facility" designation includes the imposition of various obligations on the affected property owners. Pursuant to state environmental laws, these property owners must notify potential purchasers of the dioxin contamination.

The MDEQ's declaration identifies Dow's Midland facility as the "principal source" of the dioxin. The declaration clarifies that dioxin concentrations from other sources were too low to result in the levels of dioxin discovered.

[11] In a "bifurcated" proceeding, the class would be certified with respect to the issue of Dow's liability. If Dow's liability is established, individual plaintiffs

7

The Court of Appeals dissent concluded that the circuit court did not engage in a "rigorous analysis" to determine whether the prerequisites for class certification are met, as required by *Gen Tel Co of the Southwest v Falcon*, 457 US 147, 161; 102 S Ct 2364; 72 L Ed 2d 740 (1982). Therefore, the dissent concluded that the class was erroneously certified with respect to *all* issues.[12]

This Court granted Dow's application for leave to appeal, asking the parties to address, among other issues, whether the federal "rigorous analysis" requirement for class certification also applies to state class actions and whether this particular class of plaintiffs was properly certified by the circuit court.[13]

must then choose whether to seek damages on their own. *Henry*, *supra* at 2 (Meter, P.J., concurring in part and dissenting in part). As the partial concurrence and partial dissent reasoned, the circuit court may "use case-management tools to consolidate claims that will involve largely similar proofs on the issue of damages." *Id*.

[12] *Henry*, *supra* at 1 (K.F. Kelly, J., dissenting). The dissent additionally opined that individual issues overwhelmingly predominate over any common issues of fact and law in this case, specifically noting that the flooding pattern is not uniform for each plaintiff involved. *Id*. at 5.

[13] *Henry v Dow Chem Co*, 482 Mich 1043 (2008). The order asked the parties to consider specifically:

> (1) whether the "rigorous analysis" requirement for class certification that is applied in the federal courts also applies to state class actions, see *Gen Tel Co of the Southwest v Falcon*, 457 US 147, 161; 102 S Ct 2364; 72 L Ed 2d 740 (1982);

> (2) if so, whether the Saginaw Circuit Court engaged in the required rigorous analysis to determine if class certification was appropriate;

> (3) whether the plaintiffs met all of the requisites for class certification established in MCR 3.501(A)(1), including the

8

## II. STANDARD OF REVIEW

In order to resolve the issues presented in this case, this Court must first consider the proper application of MCR 3.501(A).  The proper interpretation and application of a court rule is a question of law, which we review de novo.[14]  This court uses the principles of statutory construction when interpreting a Michigan court rule.[15]  We begin by considering the plain language of the court rule in order to ascertain its meaning.[16]  "The intent of the rule must be determined from an examination of the court rule itself and its place within the structure of the Michigan Court Rules as a whole."[17]

However, we note that this Court has not formally established the standard of review for class certification decisions.  Therefore, we take this opportunity to do so.  We have held that where a party challenges a trial court's factual findings, a review for clear error is appropriate, and where a party challenges a trial court's

---

requirement that questions of law or fact common to the members of the class predominate over questions affecting only individual members; and

    (4)  whether the plaintiffs established that they suffered injury on a class wide basis in order to justify class certification.

[14] *Haliw v Sterling Hts*, 471 Mich 700, 704; 691 NW2d 753 (2005).

[15] *Id*.

[16] *Id*. at 705.

[17] *Id*. at 706.

exercise of discretion, a review for abuse of discretion is appropriate.[18] Given that

the analysis a trial court must undertake in order to determine whether to certify a

proposed class may involve making both findings of fact *and* discretionary

determinations, we find it proper to review the trial court's factual findings for

clear error and the decisions within the trial court's discretion for abuse of

discretion. This differentiated standard of review for class certification decisions

is consistent with the mixed nature of a proper class certification analysis.

## III. ANALYSIS

The parties dispute whether the federal "rigorous analysis" requirement for

class certification also applies to state class actions and whether class certification

was appropriate in this particular case.

A. What is the proper analysis for determining whether class
certification is justified?

Pursuant to MCR 3.501(A)(1), members of a class may *only* sue or be sued

as a representative party of all class members *if* the prerequisites dictated by the

---

[18] *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006). In *Herald*, this Court clarified, in the context of the Freedom of Information Act (FOIA), that if a party challenges some underlying fact supporting the trial court's decision, then the appropriate standard of review is clear error, and the reviewing court must defer to the trial court's view of the facts unless the reviewing court is "left with the definite and firm conviction that a mistake has been made by the trial court." *Id.* at 472. However, we further held that "when an appellate court reviews a decision committed to the trial court's discretion, such as the balancing test at issue in [FOIA cases], . . . the appellate court must review the discretionary determinations for an abuse of discretion . . . ." *Id.*

court rule are met. Therefore, in order to proceed with a suit in the form of a class action, the following circumstances must exist:

> (a) the class is so numerous that joinder of all members is impracticable;
>
> (b) there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;
>
> (c) the claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> (d) the representative parties will fairly and adequately assert and protect the interests of the class; and
>
> (e) the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice. [MCR 3.501(A)(1).]

Next, MCR 3.501(A)(2) sets forth the following non-exhaustive list of factors that a court should consider when determining whether maintaining a suit as a class action is the "superior" method of adjudication:

> (a) whether the prosecution of separate actions by or against individual members of the class would create a risk of
>
> (i) inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; or
>
> (ii) adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;
>
> (b) whether final equitable or declaratory relief might be appropriate with respect to the class;
>
> (c) whether the action will be manageable as a class action;

11

(d)  whether in view of the complexity of the issues or the expense of litigation the separate claims of individual class members are insufficient in amount to support separate actions;

(e)  whether it is probable that the amount which may be recovered by individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action; and

(f)  whether members of the class have a significant interest in controlling the prosecution or defense of separate actions.  [MCR 3.501(A)(2).]

It is important to note that the rules governing class certification in MCR 3.501(A) very closely mirror the federal prerequisites for class certification found in FR Civ P 23.  In *Falcon*, the United States Supreme Court reiterated that the class action device for litigation is "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[19]  The Supreme Court concluded that district courts must conduct a "rigorous analysis" of each of the class action prerequisites in FR Civ P 23 before certifying a class.[20]

Dow argues that the federal "rigorous analysis" requirement should apply to state class actions as well.[21]  Dow asserts that representative plaintiffs will

---

[19] *Falcon*, *supra* at 155 (citation omitted).

[20] *Id.* at 161.

[21] Dow asserts that the "rigorous analysis" requirement has already been incorporated into Michigan caselaw in *Jackson v Wal-Mart Stores, Inc*, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2005 (Docket No. 258498) at 3, quoting *Falcon*, *supra* at 155.

In *Jackson*, the Court of Appeals reasoned that "'the class determination generally involves considerations that are enmeshed in the factual and legal issues

12

*always* allege that their proposed class complies with the prerequisites for class certification, and a trial court should not simply rely on these allegations when deciding whether to certify a class. While Dow concedes that a court may not deny class certification on the ground that plaintiffs are unlikely to prevail on the merits of their underlying claims, Dow argues that this prohibition alone does not relieve plaintiffs of their burden to establish that the prerequisites of class certification have in fact been met.

Conversely, plaintiffs argue that only MCR 3.501(A) governs class certification in Michigan, and that this court rule does not mandate a "rigorous analysis." Additionally, plaintiffs point out that no decision by this Court, or any published opinion by the Court of Appeals, has held that the federal "rigorous analysis" requirement applies to state class actions.

Given that Michigan's requirements for class certification are nearly identical to the federal requirements, we find it reasonable to conclude that similar purposes, goals, and cautions are applicable to both.[22] While it is true that Michigan courts are not bound by any decision requiring a "rigorous analysis," we question whether the purpose of the strictly articulated class certification

comprising plaintiff's cause of action,'" and the "rigorous analysis" may necessarily require the court to "'probe behind the pleadings' and analyze the claims, defenses, relevant facts, and applicable substantive law 'before coming to rest on the certification question.'" *Jackson*, *supra* at 3, quoting *Falcon*, *supra* at 155, 160 (citation and quotation marks omitted).

[22] The Sixth Circuit recognized class actions as a procedural device used "to achieve the economies of time, effort, and expense." *Sterling v Velsicol Chem Corp*, 855 F2d 1188, 1196 (CA 6, 1988).

prerequisites would be defeated if a representative plaintiff's only burden is to simply state that its proposed class does in fact meet the prerequisites.

Dow argues that this type of lax burden would give courts the authority to "rubber stamp" a plaintiff's allegations that the prerequisites in MCR 3.501(A)(1) have been met. To avoid this danger, Dow urges this Court to clarify that the federal "rigorous analysis" standard applies for state class actions. However, Dow's argument seems to implicate only two options: either Michigan courts must conduct a "rigorous analysis" for class certification decisions, or Michigan courts may simply accept a plaintiff's bare assertions that the prerequisites for class certification are in fact met. We believe that Dow's argument is unnecessarily narrow in scope.

The plain language of MCR 3.501(A)(1) states that representative plaintiffs may pursue a class action suit "*only if*" the enumerated prerequisites are met. Thus, it is apparent that strict adherence to the class certification requirements is required. There is nothing ambiguous about this court rule. A party seeking class certification must meet the burden of establishing each prerequisite before a suit may proceed as a class action. Furthermore, there is no authority in Michigan allowing a party seeking class certification to avoid this affirmative burden.

The next logical inquiry is what a party must show in order to satisfy a court that the prerequisites for class certification are established. More specifically, how must a court *analyze* a party's motion for class certification to determine whether sufficient information exists to justify certification?

14

Given that MCR 3.501(A)(1) contains carefully crafted prerequisites for class certification, common sense dictates that at least some greater analysis is required than simply accepting a party's bare assertion that the prerequisites have been met. The United States Supreme Court has labeled this greater analysis as a "rigorous" one in *Falcon*.[23] The problem is that *Falcon* provides little guidance as to what a "rigorous analysis" actually entails. Furthermore, *Falcon* is so factually distinct from the present case that we are unable to draw significant parallel conclusions.[24] What we *can* infer from the *Falcon* decision is that a court must only certify a class in circumstances where the court has actually been *shown* that the prerequisites for class certification are satisfied.

Before *Falcon*, the United States Supreme Court held that trial courts should not conduct "a preliminary inquiry into the merits" of claims when making a class certification determination.[25] In *Falcon*, the Supreme Court reasoned that because the decision to certify a class involves considerations "'enmeshed in the

---

[23] *Falcon*, *supra* at 161.

[24] *Falcon* is based on federal claims of Title VII discrimination. The most significant issue in *Falcon* dealt with whether it was sufficiently shown that the representative plaintiff had claims that were typical of those of the other class members. The Supreme Court concluded that no showing had been made regarding questions of law or fact that were common to the claims of the representative employee and of the members of the class he sought to represent. The Supreme Court stated in conclusion that "a Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id*. at 161.

[25] *Eisen v Carlisle & Jacquelin*, 417 US 156, 177; 94 S Ct 2140; 40 L Ed 2d 732 (1974).

factual and legal issues comprising the plaintiff's cause of action,'" a court may at times need to look further than the pleadings to make a determination on class certification.[26] The Supreme Court added that, sometimes, the question of certification will be plainly and adequately answered by the pleadings.[27] After *Falcon*, the Supreme Court clarified that a trial court has broad discretion when determining whether a class should be certified; however, its discretion must be exercised within the framework of FR Civ P 23.[28]

Now, federal courts must balance both the prohibition against delving into the merits of claims during the class certification determination with the requirement that courts conduct a "rigorous analysis" to determine whether the class certification prerequisites are satisfied. The Sixth Circuit recognizes that district courts must conduct a "rigorous analysis" to determine whether the prerequisites in FR Civ P 23 are met.[29] In addition, the United States Court of Appeals for the Sixth Circuit has acknowledged that it is possible to determine that the requirements for class certification are met solely on the basis of the

---

[26] *Falcon*, *supra* at 160, quoting *Coopers & Lybrand v Livesay*, 437 US 463, 469; 98 S Ct 2454; 57 L Ed 2d 351 (1978) (citation and quotation marks omitted).

[27] *Id*.

[28] *Gulf Oil Co v Bernard*, 452 US 89, 100; 101 S Ct 2193; 68 L Ed 2d 693 (1981).

[29] *In re American Med Sys, Inc*, 75 F3d 1069, 1078 (CA 6, 1996).

pleadings.[30] Nevertheless, this determination often requires more information than the pleadings provide.[31]

We agree with Dow that a certifying court may not simply "rubber stamp" a party's allegations that the class certification prerequisites are met.[32] However, the federal "rigorous analysis" requirement does not necessarily bind state courts.[33] We believe that the plain language of MCR 3.501(A) provides sufficient guidance for class certification decisions in Michigan. Given that MCR 3.501(A)(1) expressly conditions a class action on satisfaction of the prerequisites, a party seeking class certification is required to provide the certifying court with information sufficient to establish that each prerequisite for class certification in MCR 3.501(A)(1) is in fact satisfied. A court may base its decision on the pleadings alone *only if* the pleadings set forth sufficient information to satisfy the court that each prerequisite is in fact met.[34] The averments in the pleadings of a

---

[30] *Id.* at 1079, citing *Weathers v Peters Realty Corp*, 499 F2d 1197, 1200 (CA 6, 1974).

[31] *Id.*

[32] We note that plaintiffs do not contest this argument. In fact, plaintiffs assert that if this Court finds the need to articulate the proper analysis for class certification, it may find valuable guidance in Sixth Circuit decisions.

[33] See *Walters v Naddell*, 481 Mich 377, 390; 751 NW2d 431 (2008).

[34] The Sixth Circuit reasoned as follows in *In re American Med Sys*:

"Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Maintainability may be determined by the court on the basis of the

17

party seeking class certification are only sufficient to certify a class if they satisfy the burden on the party seeking certification to prove that the prerequisites are met, such as in cases where the facts necessary to support this finding are uncontested or admitted by the opposing party.

If the pleadings are not sufficient, the court must look to additional information beyond the pleadings to determine whether class certification is proper.[35] However, when considering the information provided to support class certification, courts must not abandon the well-accepted prohibition against assessing the merits of a party's underlying claims at this early stage in the proceedings.[36] Similar to the federal district courts, state courts also have broad

> pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide . . . . The parties should be afforded an opportunity to present evidence on the maintainability of the class action." [*In re American Med Sys*, *supra* at 1079, quoting *Weathers v Peters Realty Corp*, 499 F2d 1197, 1200 (CA 6, 1974).]

[35] A court may permit discovery before ruling on class certification pursuant to MCR 3.501(B)(3)(b), which states: "The court may allow the action to be maintained as a class action, may deny the motion, or may order that a ruling be postponed pending discovery or other preliminary procedures."

[36] *Beattie v CenturyTel, Inc*, 511 F3d 554, 560 (CA 6, 2007). In *Beattie*, the court acknowledged that a "rigorous analysis" must be applied to determine whether the prerequisites for class certification in FR Civ P 23 are met. However, the court also noted as follows:

> Rule 23 does not require a district court, in deciding whether to certify a class, to inquire into the merits of the plaintiff's suit. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177; 94 S. Ct. 2140; 40 L. Ed. 2d 732 (1974) ("We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine

discretion to determine whether a class will be certified.[37]

Certifying courts must be mindful that, when it is necessary to look beyond a party's assertions to determine whether class certification is proper, the courts shall analyze any asserted facts, claims, defenses, and relevant law without questioning the actual merits of the case.[38] We believe the above analysis strikes the appropriate balance between the need to ensure that the class certification prerequisites are sufficiently satisfied and the need to preserve a trial court's discretion in making class certification decisions.

> B. Did the circuit court engage in an appropriate analysis to determine if the prerequisites for class certification were satisfied in this particular case?

After reviewing the circuit court's decision, we believe its articulation and application of the analysis for class certification is potentially inconsistent with the required analysis. Therefore, we give the circuit court the opportunity to evaluate the class certification prerequisites in light of this Court's articulation of the proper analysis for determining whether class certification is justified.

---

whether it may be maintained as a class action."). *Daffin v. Ford Motor Co*., 458 F.3d 549, 553 (6th Cir. 2006). [*Beattie*, *supra* at 560.]

[37] See *In re American Med Sys*, *supra* at 1079.

[38] In *Jackson*, the Court of Appeals did in fact rely on *Falcon*. However, the Court of Appeals did not lose sight of the prohibition against examining the merits of a case when determining whether to certify a class, even if the certifying court finds it necessary to "'probe behind the pleadings' and analyze the claims, defenses, relevant facts, and applicable substantive law 'before coming to rest on the certification question.'" *Jackson*, *supra* at 3, quoting *Falcon*, *supra* at 160, and citing *Neal v James*, 252 Mich App 12, 15; 651 NW2d 181 (2002).

Again, there are cases where the pleadings alone will be sufficient to establish that the prerequisites are met, and a court should not evaluate the merits of the case at the class certification stage, however, mere repetition of the language of MCR 3.501(A)(1) is not sufficient to justify class certification, and there must be an adequate statement of basic facts to indicate that each prerequisite is fulfilled. As we have concluded, at least some greater analysis is required than simply accepting a party's bare assertion that the prerequisites have been met. Thus, a circuit court may not simply accept as true a party's bare statement that a prerequisite is met unless the court independently determines that the plaintiff has at least alleged a statement of basic facts and law that are adequate to support that prerequisite.

In this particular case, before conducting its analysis of the class certification prerequisites, the circuit court announced that it must "accept the allegations of the plaintiff in support of the motion as true." This statement is potentially inconsistent with the standard adopted by this Court today to the extent that it could be read to require courts to accept as true plaintiffs' bare assertions that the class certification prerequisites are met.[39]

It is not clear whether the circuit court's understanding of the prerequisites of MCR 3.501(A)(1) was consistent with the proper analysis announced in this

---

[39] The trial court's statement of the appropriate standard is similar to the approach previously adopted by the Court of Appeals in *Neal v James*, 252 Mich App 12, 15-16; 651 NW2d 181 (2002). Therefore, to the extent that *Neal* could be read to require a trial court to accept as true a plaintiff's bare assertion that a class certification prerequisite is met, we overrule *Neal*.

Court's decision today. We acknowledge that this case does not present a situation in which plaintiffs provided the circuit court with only a complaint containing bare assertions that the prerequisites of MCR 3.501(A)(1) were met and the circuit court granted plaintiffs' motion for class certification on the basis of those assertions alone. Instead, the circuit court conducted a two-day hearing and reviewed numerous documents from both parties, including scientific studies, affidavits from experts, and information provided by the MDEQ. In its analysis of MCR 3.501(A)(1)(a), (b), and (e), the circuit court appears to have independently determined that plaintiffs alleged a statement of basic facts and law sufficient to support each of those three prerequisites, and we hold that its analysis of those three prerequisites was sufficient. For MCR 3.501(A)(1)(c) and (d), however, the analysis conducted on the record by the circuit court was not sufficient to meet the proper analysis announced by this Court today.[40]

---

[40] For MCR 3.501(A)(1)(c), the typicality prerequisite, the trial court's analysis consisted of a restatement of the standard; a statement that "plaintiffs contend" that their claims "arise from the same course of conduct" and that "they share common legal and remedial theories"; and a quote from a federal district court case stating that the typicality requirement may be satisfied if "there is a nexus between the class representatives' claims [and] defenses and the common questions of fact or law which unite the class." It is unclear from the trial court's analysis whether it independently determined that the plaintiffs alleged basic questions of law and fact sufficient to support their allegation that their legal remedial theories were typical of those of the class.

In the circuit court's analysis of MCR 3.501(A)(1)(d), the adequacy of representation prerequisite, it stated that "[t]he representative parties will fairly and adequately assert and protect the interest of the class." It supported this conclusion by reasoning that "no proof has been submitted to this Court that would indicate that the Plaintiffs herein, the representative parties, would not

21

For MCR 3.501(A)(1)(c) and (d), where the analysis conducted by the circuit court on the record was not sufficient to meet the proper analysis, we do not believe that it is possible to look behind the circuit court's analysis in order to guess whether the circuit court actually conducted the correct analysis or whether the circuit court would have reached the same result if it *had* conducted the correct analysis. Especially given the extensive evidentiary record developed in this case before the class certification decision, the circuit court may have made a valid, independent determination that the plaintiffs had alleged an adequate statement of basic facts and law sufficient to support a finding that MCR 3.501(A)(1)(c) and (d) were met. Nonetheless, because the circuit court potentially used an evaluative framework that is inconsistent with this Court's interpretation of the rule, we remand this case to the circuit court so that it may at least clarify its reasoning for ruling that MCR 3.501(A)(1)(c) and (d) were met, in light of this Court's decision today.[41]

---

fairly and adequately assert and protect the interest of the class." In other words, the circuit court did not perform an analysis that sufficiently shows that it independently determined that the plaintiffs would adequately represent the class and also potentially shifted the burden to defendant to show that plaintiffs would *not* adequately represent the class.

[41] To the extent that the circuit court determines that the standard it initially used is inconsistent with the proper standard, it should reanalyze all the prerequisites under MCR 3.501(A)(1). If, however, the circuit court determines that its standard was consistent with the proper standard, it should only revisit MCR 3.501(A)(1)(c) and (d) in order to provide further explanation on the record for its conclusion that the prerequisites were met.

We do not reach the question of if, and to what extent, the issues involved in this case should be "bifurcated." However, we note that it is within the circuit court's discretion to certify a class on a limited basis and to decertify certain members of the class when it deems it appropriate under MCR 3.501(B)(3).[42]

---

[42] Justice Young states that we have "reversed the Court of Appeals majority's decision that bifurcation on damages is required," and, in doing so, violated this Court's procedural rules because the plaintiffs did not file a cross-appeal on this issue. *Post* at 17. We disagree that the Court of Appeals reached a decision on bifurcation that would have required plaintiffs to cross-appeal the issue in order for it to be before this Court.

We suggest that Justice Young is misreading the Court of Appeals opinions. To the extent that there was a Court of Appeals "decision" on bifurcation, it is because there were two votes in favor of class certification *only* for the issue of liability and two votes against class certification *only* for the issue of whether the commonality prerequisite was met with regard to damages. The Court of Appeals wrote three separate opinions. *Henry v Dow Chem Co*, unpublished opinion of the Court of Appeals, issued January 24, 2008 (Docket No. 266433). Judge Karen Fort Hood would have affirmed the trial court's ruling that the class should be certified, without qualification. Judge Patrick Meter, in a partial concurrence and partial dissent, would have certified the class "with regard to defendant's potential liability," but believed that "with regard to damages, individual questions predominate over common questions." *Id.* at 1 (Meter, P.J., concurring in part and dissenting in part). Therefore, he believed that "the damages phase, should liability be established, must be dealt with on a case-by-case basis." *Id.* Judge Kirsten Frank Kelly would have reversed the trial court and held that the class could not be certified with regard to any issues because she believed that "individual questions of fact and law predominate over the issues common to the class such that the commonality requirement of MCR 3.501(A) is not met." *Id.* at 1 (K.F. Kelly, J., dissenting).

Given that only one Court of Appeals judge held that bifurcation was necessary, reading the Court of Appeals opinion to have reached a holding regarding bifurcation requires cobbling together three divergent applications of the commonality prerequisite in MCR 3.501(A)(1). If this Court were to reverse the Court of Appeals holding concerning the commonality prerequisite with regard to damages, there would be no Court of Appeals "decision" requiring bifurcation. This Court *specifically granted leave* on whether the commonality prerequisite

23

Indeed, the circuit court's order suggested that it recognizes that it will likely be administratively easier to bifurcate at some point. Given that the most efficient method for conducting the proceedings will likely be affected by how other issues in the case develop, and given the circuit court's extensive familiarity with the complex factual and legal issues presented, we do not think that the circuit court abused its discretion by waiting to determine to what extent bifurcation of the issues involved may be needed.

## IV. CONCLUSION

A party seeking class certification bears the burden of establishing that each of the prerequisites for class certification in MCR 3.501(A)(1) is in fact satisfied. It is not sufficient for a certifying court to simply accept a party's assertion that the prerequisites are met. When it is necessary to look beyond a party's assertions in order to assess whether the prerequisites for class certification are met, a certifying court should do so without delving into the merits of the underlying claims involved.

Because the circuit court potentially used an evaluative framework that is inconsistent with this Court's interpretation of the rule and articulation of the proper analysis for class certification, we remand this case to the circuit court so

was met. *Henry v Dow Chem Co*, 482 Mich 1043 (2008) (ordering the parties to address "whether the plaintiffs met all of the requisites for class certification established in MCR 3.501(A)(1), including the requirement that questions of law or fact common to the members of the class predominate over questions affecting only individual members [the commonality prerequisite]"). Therefore, to the extent that there was a Court of Appeals holding regarding bifurcation, it is squarely before this Court.

that it may at least clarify its reasoning for ruling that MCR 3.501(A)(1)(c) and (d)

were met, in light of this Court's decision today.

Elizabeth A. Weaver
Marilyn Kelly
Michael F. Cavanagh
Diane M. Hathaway

# STATE OF MICHIGAN

## SUPREME COURT

GARY HENRY and ALL OTHERS
SIMILARLY SITUATED,

      Plaintiffs-Appellees,

v                                  No. 136298

DOW CHEMICAL COMPANY,

      Defendant-Appellant.

_____

YOUNG, J. *(concurring in part and dissenting in part)*.

In this case, we are asked to review the trial court's certification of a plaintiff class consisting of approximately 2,000 landowners within the flood plain of the Tittabawassee River. The Michigan Court Rules govern the procedure for certifying class actions in Michigan courts. MCR 3.501(A)(1) provides specific prerequisites for proposed plaintiff classes. A party seeking class certification bears the burden of proving that these prerequisites are in fact met and must provide sufficient information to the ruling court for it to make the determination that the prerequisites are met. Because part II of the majority opinion correctly articulates the appropriate appellate standard of review for class certification decisions and part III(A) of the majority opinion correctly articulates the appropriate legal standard a trial court must apply in ruling on a motion for class certification, I join those sections of the majority opinion.

While I would vacate the entirety of the trial court's class certification decision because it committed a legal error by using the wrong legal standard in certifying the class, the majority determines only that the trial court's analysis of MCR 3.501(A)(1)(c) and (d) was insufficient and requires further explanation. In doing so, the majority also reverses *sub silentio* the determination of the Court of Appeals majority limiting the scope of the proposed class action to issues of liability only. I therefore dissent in part. Because I believe that the trial court's decision was wholly affected by its application of an incorrect standard, I would vacate the class certification in its entirety and remand to the trial court for a completely new ruling on the motion for class certification and limit any certification of the proposed class to issues of liability. The trial court in this case expressly indicated that it *must* "accept the allegations of the plaintiff in support of the motion [for class certification] as true." This is inconsistent with the plain requirement of the court rules, which allow class certification "only if" the prerequisites listed in MCR 3.501(A)(1) are *met*, not merely alleged. I therefore would vacate its class certification regarding liability in its entirety and remand to the trial court so it can apply the appropriate legal standard.

I also dissent from the majority's decision to give discretion to the trial court to certify the class on the issue of damages. The plaintiffs did not cross-appeal the decision of the Court of Appeals majority to vacate class certification

2

on the issue of damages, and therefore this Court cannot vitiate this unappealed ruling of the Court of Appeals.

## I. Facts and Procedural History

Plaintiffs commenced the instant action against defendant, Dow Chemical Company, for its alleged pollution of the Tittabawassee River. They claim that the release of dioxin into the Tittabawassee River has either directly contaminated their properties or has otherwise adversely affected their properties. They subsequently moved for class certification. Plaintiffs' proposed class consists of all owners of real property in Saginaw County within the 100-year flood plain of the Tittabawassee River, as of February 1, 2002.[1] This proposed class contains approximately 2,000 people. Defendant opposed class certification.

After receiving supplemental briefs and hearing oral arguments on the motion for class certification, the Saginaw Circuit Court issued its opinion and order granting class certification on October 21, 2005. At the outset of its analysis, the court explained that it was bound to accept the plaintiffs' allegations supporting its motion for class certification as true:

> Due to the limited case law in Michigan addressing certification of class action lawsuits, the Court can refer to federal case law that interprets the federal rules on class certification.

---

[1] A river's "100-year flood plain" is the land area subject to the floodwaters from a flood that has a one percent chance of occurring in any given year. Accordingly, the land at the edge of the 100-year flood plain has a one percent chance of being flooded with water from the Tittabawassee River in any given year, while land closer to the river has a greater chance of being flooded in any given year.

*Brenner v Marathon Oil Co*, 222 Mich App 128, 133 (1997). When evaluating a motion for class certification, the court is to accept the allegations of the plaintiff in support of the motion as true. The merits of the case are not examined. *Allen v Chicago*, 828 F Supp 543, 550 (ND Ill, 1993). The plaintiff bears the burden of proving that the class should be certified. *Id.*[2]

The court then listed the five requirements of class certification and discussed the plaintiffs' allegations regarding each of these requirements. I reprint the trial court's analysis of the five requirements in its entirety:

a. The first requirement that the Plaintiffs must meet is that "the class is so numerous that joinder of all members is impracticable." MCR 3.501(A)(1)(a). The Plaintiffs define the potential class as:

"All persons who owned real property within the one-hundred year Flood Plain of the Tittabawassee River in Saginaw County, Michigan on February 1, 2002. For purposes of this class definition, the one-hundred year Flood Plain of the Tittabawassee River is defined as the geographic area set forth on the map attached as Exhibit A (Exhibit B attached to this order), which is generally bounded on the west and south by River Road and Stroebel Road, including property on the west and south side of such roads, and generally bounded on the east and north by Midland Road, St. Andrews Road, and Michigan Avenue, including property on the east and north sides of such roads and avenue."

The Plaintiffs also allege and the Court finds that there would be approximately 2,000 persons in the proposed class. The Court finds that the class is so numerous that joinder of all members is impracticable.

b. There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

All of the Plaintiffs' claims are based on the allegation that the Defendant polluted the Tittabawassee River, causing damage to the Plaintiffs in the form of reduced value of their home and

---

[2] All citations have been converted to this Court's standard format.

4

property. Therefore, the alleged negligence of the Defendant, if any, as to the cause of the alleged pollution is common to all potential Plaintiffs. Equally, any questions of law would be common to the entire class. Although the question of damages may be individualized, the mere fact that damages may have to be computed individually is not enough to defeat a class action. As the Court stated in *Sterling v Velsicol Chem Corp*, 855 F2d 1188, 1197 (CA 6, 1988):

> "No matter how individualized the issues of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remaining [sic] after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." See also *Dix v Am Bankers Life Assurance Co*, 429 Mich 410, 417, 418, 419 (1987), and the more recent case of *Mejdrech, et al v Met-Coil Sys Corp*, 319 F3d 910 (CA 7, 2003).

This Court finds that there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

c. The claims or defenses of the representative parties are typical of the claims or defenses of the class.

In this case, Plaintiffs contend that their property claims arise from the same course of conduct by Defendant Dow and that they share common legal and remedial theories with the members of the class. The court in *Cook v Rockwell Int'l Corp*, 151 FRD 378 (D Colo, 1993), stated:

> "So long as there is a nexus between the class representatives' claims [and] defenses and the common questions of fact or law which unite the class the typicality requirement is satisfied (citations omitted) . . . . The positions of the named plaintiffs and the potential class members do not have to be identical. Thus, the requirement may be satisfied even though varying fact patterns support the claims or defenses of individual class members or there is a disparity in the damages claimed by the representative parties and the other members of the class. The court finds that the representative parties' claims are not adverse or antagonistic to others in the class.

5

Therefore, the court finds that the claims or defenses of all of the representative parties are typical of the claims or defenses of the class and are not antagonistic to the class."

d. The representative parties will fairly and adequately assert and protect the interest of the class.

There presently are approximately seven Plaintiffs who are the representative parties. Further, no proof has been submitted to this Court that would indicate that the Plaintiffs herein, the representative parties, would not fairly and adequately assert and protect the interest of the class.

e. The maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

To deny a class action in this case and allow the Plaintiffs to pursue individual claims would result in up to 2,000 individual claims being filed in this Court. Such a result would impede the convenient administration of justice. Further, such a procedure would or could result in inconsistent or varying adjudications with respect to individual members of the class. A class action would also assure legal assistance to the members of the class. Moreover, a class action would achieve economy of time, effort and expense. The Court specifically finds that the action would be manageable as a class action based on the facts and the reasons set forth herein. Each member of the class lives in the area alleged to have been damaged. Each member of the class allegedly suffered damages as a result of the release of contaminates in the Tittabawassee River. Almost identical evidence would be required to establish negligence and causal connection between the alleged toxic contamination and Plaintiffs' damages and the type of damages allegedly suffered. The Court stated in *Sterling v Velsicol Chem Corp*, *supra* at 1197:

"In the instant case, each class member lived in the vicinity of the landfill and allegedly suffered damages as a result of ingesting or otherwise using the contaminated water. Almost identical evidence would be required to establish the level and duration of chemical contamination, the causal connection, if any, between the plaintiffs' consumption of the contaminated water and the type of injuries allegedly suffered and the defendant's liability. A single major issue distinguishing the class members is the nature and amount of

6

damages, if any, that each sustained. To this extent, a class action in the instant case avoided duplication of judicial effort and prevented separate actions from reaching inconsistent results with similar, if not identical, facts. The district court clearly did not abuse its discretion in certifying this action as a rule of [sic] 23(b)(3) class action. However, individual members of the class still would be required to submit evidence concerning their particularized damages, damage claims and subsequent proceedings."

The Court finds that the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.[3]

The Court of Appeals rendered three individual opinions in ruling on defendant's appeal. Judge Meter and Judge Fort Hood affirmed the trial court's certification with regard to the issue of Dow's liability,[4] while Judge Meter and Judge K.F. Kelly determined that the individual issues predominate over class-wide issues with respect to damages.[5] Defendant appeals the Court of Appeals judgment and claims that the trial court erred in certifying the plaintiff class.[6] It argues that certification should be vacated, first, because the trial court applied an erroneous legal standard in accepting the plaintiffs' allegations in support of their

---

[3] All internal citations have been converted to this Court's standard format.

[4] *Henry v Dow Chem Co*, unpublished opinion per curiam of the Court of Appeals, issued January 24, 2008 (Docket No. 266433). Accord *id.* (Meter, P.J., concurring in part and dissenting in part).

[5] *Id.* (Meter, P.J., concurring in part and dissenting in part). Accord *id.* (K.F. Kelly, J., dissenting).

[6] Plaintiffs did not file a cross-appeal of the Court of Appeals ruling that damages must be determined individually.

7

motion for class certification as true and, second, because the plaintiffs' proposed class fails as a matter of law.

## II. Standard of Review

This Court has not expressly established a standard for reviewing certification of a class action, although in a peremptory order we impliedly reviewed a class certification decision for clear error.[7] The Court of Appeals has accordingly employed a clear error standard.[8] "In Michigan, the clear error standard has historically been applied when reviewing a trial court's factual findings whereas the abuse of discretion standard is applied when reviewing matters left to the trial court's discretion."[9] I concur in part II of the majority opinion and agree that legal determinations are reviewed under a de novo standard, that findings of fact are reviewed under a clear error standard, and the court's ultimate certification decision is reviewed for abuse of discretion. An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes.[10]

---

[7] *Hill v City of Warren*, 469 Mich 964 (2003).

[8] See, e.g., *Neal v James*, 252 Mich App 12, 15; 651 NW2d 181 (2002).

[9] *Herald Co, Inc v Eastern Michigan Univ Bd of Regents*, 475 Mich 463, 471; 719 NW2d 19 (2006).

[10] *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

III.  To Be Certified as a Class of Plaintiffs in Michigan Courts, the Requirements

Provided in MCR 3.501 Must, *in Fact*, be Met

The Michigan Court Rules govern the certification of class actions.  MCR 3.501(A)(1) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all members in a class action *only if*:
>
> (a)  the class is so numerous that joinder of all members is impracticable;
>
> (b)  there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members;
>
> (c)  the claims or defenses of the representative parties are typical of the claims or defenses of the class;
>
> (d)  the representative parties will fairly and adequately assert and protect the interests of the class; and
>
> (e)  the maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.[11]

The plain language of MCR 3.501(A)(1) is clear: representative plaintiffs may pursue a class action lawsuit "only if" the enumerated prerequisites have been met.

The procedure for certifying a class in Michigan underscores this requirement.  Because a "plaintiff must move for certification that the action may

---

[11] MCR 3.501(A)(1) (emphasis added).

be maintained as a class action,"[12] the plaintiff bears the burden of satisfying the trial court by a preponderance of the evidence that the prerequisites to class certification have been met. Moreover, once the plaintiff moves to certify a class, the trial court "may allow the action to be maintained as a class action, may deny the motion, or may order that a ruling be postponed pending discovery or other preliminary procedures."[13] In other words, MCR 3.501 expressly contemplates that the trial court should make an independent determination that the proposed class meets the requirements for class certification. Thus, a trial court may certify a class only if the plaintiffs have provided sufficient information that each prerequisite to class certification has been met. Because part III(A) of the majority opinion correctly articulates this standard, I join that section of the opinion.

I also concur in the majority's decision to overrule *Neal v James*[14] to the extent it "require[s] a trial court to accept as true a plaintiff's bare assertion that a class certification prerequisite is met . . . ."[15] The Court of Appeals in *Neal* held that a trial court must "accept the allegations made in support of the request for certification as true."[16] Although the trial court in the instant case did not

---

[12] MCR 3.501(B)(1)(a).

[13] MCR 3.501(B)(3)(b).

[14] *Neal*, 252 Mich App 12.

[15] *Ante* at 21 n 39.

[16] *Neal*, 252 Mich App at 15. *Neal* has subsequently been cited for this proposition in a published opinion of the Court of Appeals. See *Duncan v*

10

expressly indicate its reliance on *Neal*, as a published Court of Appeals decision, it is binding on all lower courts.[17] The requirement in *Neal* that a certifying court is bound to accept the plaintiffs' allegations supporting its motion for class certification as true, however, is inconsistent with the plain meaning of MCR 3.501 as articulated above. Moreover, it cites stale federal precedent for its statement of law.[18] Accordingly, I concur with the majority that *Neal* is overruled to the extent that it is inconsistent with the rule of law articulated today.

---

*Michigan*, ___ Mich App ___, ___; ___ NW2d ___, decided June 11, 2009 (Docket No. 278652), slip op at 45.

[17] MCR 7.215(C)(2).

[18] Both the *Neal* Court and the instant trial court cited a stale federal district court case for the proposition that a trial court is bound to accept the plaintiff's pleadings on behalf of the motion for certification as true. *Allen v Chicago*, 828 F Supp 543, 550 (ND Ill, 1993) ("In evaluating the motion for class certification, the allegations made in support of certification are taken as true . . . ."). However, the Seventh Circuit Court of Appeals subsequently undermined *Allen* in *Szabo v Bridgeport Machines, Inc*, 249 F3d 672, 676 (CA 7, 2001), which precluded courts from relying uncritically on the allegations contained in motions for class certification: "Before deciding whether to allow a case to proceed as a class action, . . . a judge should make whatever factual and legal inquiries are necessary under [Federal] Rule [of Civil Procedure] 23." Therefore, even if a Michigan court "can refer to federal cases construing the federal rules on class certification," *Neal*, 252 Mich App at 15, it should look only to cases that *remain* good law.

*Applicable* federal caselaw does not require that trial courts accept the allegations in support of the motion for class certification as true. Indeed, the United States Supreme Court expressly negated that principle. *Gen Tel Co of the Southwest v Falcon*, 457 US 147, 160; 102 S Ct 2364; 72 L Ed 2d 740 (1982). The Court of Appeals' citation of *Falcon* in *Duskin v Dep't of Human Services*, ___ Mich App ___, ___; ___ NW2d ___, decided June 11, 2009 (Docket No. 279151), slip op at 5, is consistent with the use of applicable federal precedent.

11

IV.  The Trial Court Erred by Certifying the Class to the Extent It Stated and

Applied an Erroneous Standard of Law

A.  The Trial Court Articulated an Erroneous Standard of Law

Before certifying the plaintiff class, the trial court sought briefing and conducted extensive oral arguments on the motion for class certification. Nevertheless, even though it did so, the trial court's opinion made no mention of these facts.  Instead, the trial court prefaced its ruling by explaining that "[w]hen evaluating a motion for class certification, the court is to accept the allegations of the plaintiff in support of the motion as true."  This statement has meaning, and its meaning completely rebuts the plaintiffs' claim that the trial court conducted the appropriate analysis in making its ruling on class certification.  The trial court's statement indicates that it approached its analysis without the appropriate analytical independence from the plaintiffs' allegations supporting class

---

While federal caselaw may be helpful in interpreting a similarly worded but ambiguous provision in the Michigan Court Rules, courts must not forget that it is the *Michigan* Court Rules that they are interpreting.  Accordingly, federal caselaw interpreting the *Federal* Rules of Civil Procedure can be instructive at most, but never controlling.  As explained earlier, the plain language of MCR 3.501(A)(1) requires that the prerequisites for class certification must in fact be met before a trial court can certify a class of plaintiffs.  That federal caselaw interprets FR Civ P 23 similarly is fortuitous but ultimately of less import than the actual text of the Michigan Court Rules.

certification. It is appropriate to vacate the trial court's certification for this legal error alone.[19]

## B. The Trial Court Applied an Erroneous Standard of Law

Moreover, a critical reading of the trial court's actual ruling underscores the inappropriate deference that the trial court afforded plaintiffs' pleadings on the motion for class certification. For example, in concluding that "there are questions of law or fact common to the members of the class that predominate over questions affecting only individual members,"[20] the trial court merely reiterated plaintiffs' claims without discussing the arguments that defendant proffered in opposition to the motion.

Defendant's trial brief listed several questions of law or fact that it alleged required individualized determination:

- How each proposed property class member uses and enjoys his, her[,] or its property (when, in fact, there are a vast array of different types of commercial, industrial, agricultural, residential, governmental, non-profit and other entities in the 20-mile-long proposed property class area, and each proposed class member uses and enjoys his, her[,] or its property in ways different from others);

---

[19] The trial court's statement that "[t]he plaintiff bears the burden of proving that the class should be certified" does not cure any defect it caused by saying it was bound to accept the plaintiffs' allegations supporting class certification as true. If the plaintiffs' allegations supporting class certification *must* be accepted as true, as the trial court stated, then the plaintiffs can meet their burden of proof merely by alleging that the requirements for class certification have been met.

[20] MCR 3.501(A)(1)(b).

- Whether each proposed class member has suffered a substantial and unreasonable interference with use and enjoyment as a result of misconduct by Dow (when, in fact, such proposed class members already have testified that they have not suffered any such interference, and the alleged interferences from others are highly variable and dissimilar);

- Whether the different levels of dioxin on class properties constitute an unreasonable and substantial interference with use and enjoyment (when, in fact, the levels differ significantly from each other, such that some proposed class members have no level of dioxin on their soil in excess of levels upstream of Dow, some have no level of dioxin on their soil in excess of the DEQ's direct contact criteria, and other proposed class members have higher levels);

- What duty (if any) Dow owes to each particular proposed class member (when, in fact, different types of dioxin have been deposited on different proposed class properties at different times over the past 100 years, by potentially many different entities, who would have faced vastly different standards of care and states of the art at the time of such deposits and, even focusing on the most current version of the DEQ's direct action criteria (which were not applicable until recently), different DEQ criteria apply to different types of property within the class, and those criteria differ from applicable federal criteria);

- Whether Dow violated any duty owed to different proposed class members (when, in fact, the various levels of dioxin on the different properties fall both above and below the various potential standards of care that could have been in effect over the past 100 years);

- Whether any proposed class member's property value was injured (when, in fact, many proposed class members already have sold their class properties at a substantial profit, including some who received more than their asking price and others who have sold for more than their recently appraised value, whereas others have no interest in ever selling their property, and others refuse to sell, and still others contend their property has been rendered "worthless");

14

- Whether and how each proposed class member is situated vis-à-vis Dow's defenses, including the statute of limitations (when, in fact, many proposed class members have believed for many years that Dow polluted the Tittabawassee River, including with dioxin, and thereby diminished the use and enjoyment and value of proposed class properties).

Thus, defendant raised several issues in this case that may require individualized determination, and that therefore may bar class certification under MCR 3.501(A)(1)(b). Even if these concerns ultimately do not preclude class certification, the issues raised are ones that a trial court would have rebutted or explained if it had conducted an independent inquiry into whether the prerequisites of class certification had in fact been met. The trial court's failure to respond to *any* of these claims in its ruling, therefore, belies the plaintiffs' contention that the trial court conducted an appropriate analysis of whether the plaintiffs' proposed class met the requirements for class certification. Moreover, it belies the majority's assumption that the trial court conducted an appropriate analysis of *some* of the class certification prerequisites, as the predomination prerequisite is one in which the majority concluded that "the circuit court appears to have independently determined that plaintiffs alleged a statement of basic facts and law sufficient to support [the] prerequisite[] . . . ."[21]

Because the trial court failed to address defendant's arguments in opposition to class certification, not only did it *articulate* a legal standard that was

---

[21] *Ante* at 21.

inconsistent with the plain meaning of the Michigan Court Rules, but it also *applied* that inappropriate standard in granting class certification. Accordingly, class certification must be vacated in its entirety, and this case must be remanded to the trial court for reconsideration of *all* the class certification prerequisites in light of the appropriate legal standard.

## C. Instructions for Remand

On remand, the trial court must determine whether the plaintiffs' proposed class *in fact* meets the prerequisites for class certification contained in MCR 3.501(A)(1).[22] If the trial court determines that the proposed class meets the prerequisites for class certification, then the trial court may certify the proposed class. However, if it certifies the same class, it may *only* certify that class with regard to the issue of Dow's liability. Two judges on the Court of Appeals held that, as a matter of law, damages must be determined in individual proceedings.[23] I would not disturb that holding; indeed, the plaintiffs did not file a cross-appeal to dispute the majority's determination that proceedings to determine damages must be bifurcated from any class action regarding Dow's liability. Accordingly, I

---

[22] Pursuant to MCR 3.501(B)(3)(d)(ii), the trial court may instead divide the proposed class "into separate classes with each treated as a class for purposes of certifying [or] denying certification . . . ."

[23] *Henry*, *supra* (Meter, P.J., concurring in part and dissenting in part); (K.F. Kelly, J., dissenting).

16

would preclude the trial court from certifying the proposed class on the issue of damages, since that legal issue has been settled for the purposes of this litigation.[24]

The majority has reversed the Court of Appeals majority's decision that bifurcation on damages is required. Although it claims that it "do[es] not reach the question of if, and to what extent, the issues involved in this case should be 'bifurcated,'"[25] it does so by subterfuge in claiming that it "do[es] not think that the circuit court abused its discretion by waiting to determine to what extent bifurcation of the issues involved may be needed."[26] This is in direct contradiction of the majority position of the Court of Appeals, which states unequivocally that "with regard to damages, individualized questions prevail."[27] This gross violation

---

[24] Moreover, the law of the case doctrine would preclude a subsequent appellate court from certifying the proposed class on the issue of damages. *CAF Investment Co v Saginaw Twp*, 410 Mich 428, 454; 302 NW2d 164 (1981) ("[I]f an appellate court has passed on a legal question and remanded the case for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain materially the same.").

[25] *Ante* at 23.

[26] *Ante* at 24.

[27] *Henry*, *supra*, at 1 (Meter, P.J., concurring in part and dissenting in part). Accord *id.* (K.F. Kelly, J., dissenting). The majority posits that I am "misreading" the Court of Appeals opinions by "cobbling together three divergent" opinions to come to my conclusion that two judges would have reversed the trial court's certification with respect to damages. *Ante* at 23 n 42. I see no other way of interpreting the three Court of Appeals opinions. Though fractured, they reach a clear *result*. Judge Fort Hood would have affirmed class certification entirely; Judge Meter would have affirmed class certification only with respect to questions of liability; and Judge K.F. Kelly would have vacated class certification entirely.

17

of our procedural rules is yet another indication of the majority's now familiar approach to seek its desired result whatever the consequences.[28] The plaintiffs,

While only one Court of Appeals judge specifically mandated "bifurcation," that result is the only way of reconciling the three divergent Court of Appeals positions. In any event, that result was not appealed by the plaintiffs and, as a result of the majority's opinion, plaintiffs are in a better position than they would have been had *defendant* not appealed. The only principled basis for avoiding the Court of Appeals ruling on damages would be if a *different* class were certified. However, this principled approach is unavailable to the majority because it preserves part of the class certification the trial court rendered and requires only that the trial court reconsider portions of its analysis. Thus, unless the trial court declines to certify on remand or certifies a different class, the majority has enhanced plaintiffs' position.

[28] The majority's determination to ignore facts and precedent inconvenient to its desired outcome has become its *modus operandi*. See, e.g., *Vanslembrouck v Halperin*, 483 Mich 965 (2009), where the new majority ignored *Vega v Lakeland Hospitals at Niles & St Joseph, Inc*, 479 Mich 243, 244; 736 NW2d 561 (2007); *Hardacre v Saginaw Vascular Services*, 483 Mich 918 (2009), where it failed to follow *Boodt v Borgess Med Ctr*, 481 Mich 558; 751 NW2d 44 (2008); *Sazima v Shepherd Bar & Restaurant*, 483 Mich 924 (2009), where it failed to follow *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606; 295 NW 331 (1940), and *Camburn v Northwest School Dist*, 459 Mich 471; 592 NW2d 46 (1999); *Juarez v Holbrook*, 483 Mich 970 (2009), where it failed to follow *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008); *Chambers v Wayne Co Airport Auth*, 483 Mich 1081 (2009), where it failed to follow *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197; 731 NW2d 41 (2007); and *Scott v State Farm Mut Auto Ins Co*, 483 Mich 1032 (2009), where it failed to enforce *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986), and *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626; 563 NW2d 683 (1997). Chief Justice Kelly contends, as she has elsewhere, that "the accusation that the Court has been ignoring precedent is incorrect." *Ante* at 4. See also *Potter v McLeary*, 484 Mich ___, ___; ___ NW2d ___ (2009) (Kelly, C.J., concurring), decided July 31, 2009 (Docket No. 136336), slip op at ___; and *Beasley v Michigan*, 483 Mich 1025, 1025-1027 (2009) (Kelly, C.J., concurring). This response has been repeatedly answered in detail. See *Beasley*, 483 Mich at 1027-1030 (Corrigan, J., dissenting); *Potter*, 484 Mich at ___ (Markman, J., concurring in part and dissenting in part), slip op at ___. More importantly, Chief Justice Kelly's response fails to address the fundamental problem that "[leaving] intact precedents that were inconsistent with new decisions essentially allow[s] future litigants to choose among inconsistent

appellees to this case, have not filed a cross-appeal of the Court of Appeals majority's decision requiring that damages be determined on an individualized basis. It is a basic principle of appellate procedure that appellees who have not cross-appealed "may not obtain a decision more favorable to them than was rendered by the Court of Appeals."[29] The majority's failure to follow this basic principle of law by declaring that the trial court has discretion *not to follow the binding decision of the Court of Appeals*, where the majority does not even state that it is reversing any part of the Court of Appeals' judgment, is contrary to this Court's precedent and unworthy of a Court committed to the rule of law.[30]

## V. Conclusion

The party seeking certification of a class under MCR 3.501 bears the burden of establishing by a preponderance of the evidence that its proposed class *in fact* meets the requirements for class certification as articulated in the Michigan

precedents as in columns A and B of a Chinese restaurant menu." *Rowland*, 477 Mich at 227 (emphasis and punctuation omitted).

[29] *McCardel v Smolen*, 404 Mich 89, 94-95; 273 NW2d 3 (1978). See also *Pontiac Twp v Featherstone*, 319 Mich 382, 390; 29 NW2d 898 (1947) ("In the absence of a cross appeal, errors claimed to be prejudicial to appellee cannot be considered nor may appellee have enlargement of relief.").

[30] Our order granting leave to appeal asked the parties to brief four issues. *Henry v Dow Chem Co*, 482 Mich 1043 (2008). Needless to say, due the lack of a cross-appeal, we did not ask the parties to brief whether the Court of Appeals had erred in holding that the trial court had erred in granting class certification regarding the issue of damages. All appellate practitioners should take careful note of today's decision, because an appellant is ending up in a worse position than it was in under the Court of Appeals decision that it appealed, even though no cross-appeal was filed.

Court Rules. The trial court, therefore, is not bound to accept the allegations of the moving party, but rather must make an independent finding that the prerequisites of class certification have been met. Because the trial court in the instant case did not make such an independent determination, I would vacate class certification in its entirety and remand this case to the circuit court for further proceedings consistent with this opinion. I would not disturb the Court of Appeals majority's decision that the proposed class may not be certified on the issue of damages.

Robert P. Young, Jr.
Maura D. Corrigan
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

GARY HENRY and ALL OTHERS
SIMILARLY SITUATED,

   Plaintiffs-Appellees,

v              No. 136298

DOW CHEMICAL COMPANY,

   Defendant-Appellant.

_____

CORRIGAN, J. (*concurring in the opinion of YOUNG, J.*).

   I join Justice Young's opinion in full.  I write separately in order to discuss additional issues raised by this appeal that I believe the trial court should consider on remand before again certifying a class in this case.  The trial court's October 21, 2005, opinion and order granting class certification formally defined the class to include "all persons who owned real property within the one-hundred year Flood Plain of the Tittabawassee River in Saginaw County, Michigan, on February 1, 2002."  The class definition also included a geographic description of the relevant flood plain.  But the definition did *not* limit the class to those property owners who are *actually injured* by pollution emanating from the activities of defendant, Dow Chemical Company.  Rather, the order defined the class broadly to include all of the approximately 2,000 persons who owned property on approximately 13,000 acres of land.  I conclude that such an indiscriminate,

overbroad definition of the class failed to comport either with MCR 3.501 or with the precedent cited in the trial court's order because it included numerous class members *with no present injuries.*

Further, such an overbroad class definition would be likely to have significant, negative effects on the hundreds of purported class members who indeed may have no present injuries. It is striking that only about 170 landowners had elected to join this suit as plaintiffs at the time of the trial court's certification decision.[1] The owners of property with no present injuries may reasonably wish *not* to be included in the class because certification of their otherwise unharmed property may *itself* guarantee reduction in their property values; these landowners will never recover against Dow because they cannot allege damages under negligence or nuisance theories, but their property values may collapse further simply as a result of their being lumped into the class.

For this reason, if the trial court on remand again concludes that certification of a class is proper, I would direct the court to limit the class to those property owners with *actual injuries* as a result of Dow's activities.

---

[1] Indeed, although I agree with Justice Young that the trial court should reconsider whether the proposed class satisfied *each* criterion for class certification on the question of Dow's liability, I agree with the majority that the record presents particularly problematic unanswered questions concerning whether the representative plaintiffs' claims are typical of those of the proposed class, MCR 3.501(A)(1)(c), and whether plaintiffs will "fairly and adequately assert and protect the interests of the class" as class representatives, MCR 3.501(A)(1)(d). See *ante* at 22-23.

*The actual injury requirement*

It is axiomatic that each member of a plaintiff class must have suffered an actionable injury, which is a prerequisite of any tort claim. "[C]lass members must have suffered actual injury to have standing to sue . . . ." *Zine v Chrysler Corp*, 236 Mich App 261, 288; 600 NW2d 384 (1999). As the United States Supreme Court opined in *Gen Tel Co of the Southwest v Falcon*, 457 US 147, 156; 102 S Ct 2364; 72 L Ed 2d 740 (1982): "We have repeatedly held that a class representative must be part of the class and possess the same interest and *suffer the same injury* as the class members." (Emphasis added; citation and quotation marks omitted.) Michigan cases similarly require plaintiffs to "demonstrate with common proof that the members of the class have suffered *a common injury*." *A&M Supply Co v Microsoft Corp*, 252 Mich App 580, 599-600; 654 NW2d 572 (2002) (emphasis added).

Likewise, the federal toxic tort cases relied on by plaintiffs and the trial court involved certification of classes explicitly defined by reference to the members' *present injuries*. For example, the discussion in *Sterling v Velsicol Chem Corp*, 855 F2d 1188, 1197 (CA 6, 1988), which the trial court quotes at length in its October 21, 2005, order, addresses a class of residents who alleged that they "suffered damages as a result of ingesting or otherwise using . . . contaminated water." *Sterling* involved plaintiffs who lived near a landfill from which toxic chemicals seeped into the ground, contaminating soil and groundwater. Much as in the present case, because several wells near the site

3

tested positive for contamination, all residents within 1,000 acres of the site were advised to stop using their wells for any purpose. Several residents sued under theories including nuisance and negligence. *Id.* at 1192-1194. The United States Court of Appeals for the Sixth Circuit affirmed class certification. But the class did not indiscriminately include *every* resident within the 1,000-acre area; rather, *Sterling*'s discussion and holding presuppose that each class member had a present injury because "each class member lived in the vicinity of the landfill *and* allegedly *suffered damages as a result of ingesting or otherwise using* the contaminated water." *Id.* at 1197 (emphasis added). Similarly, the class in *Olden v Lafarge Corp*, 383 F3d 495, 507 (CA 6, 2004), was expressly defined as "all owners of single family residences in the City of Alpena whose persons or property *was damaged* by toxic pollutants and contaminants which originated from the Lafarge cement manufacturing facility . . . ." (Emphasis added.) In contrast, as noted, the class certified here broadly included "all persons who owned real property" within the 100-year flood plain, without reference to whether such persons could allege harm as a result of Dow's activities. Because it is apparent that such an overbroad class cannot all allege cognizable claims, I conclude that plaintiffs' proposed class definition is flawed.

*Present injuries under the torts alleged*

Plaintiffs sued under negligence and nuisance theories. To prove negligence, "a plaintiff must demonstrate a present physical injury to person or

4

property *in addition to* economic losses that result from that injury." *Henry v Dow Chem Co*, 473 Mich 63, 75-76; 701 NW2d 684 (2005) (*Henry I*) (emphasis in original). *Henry I* created a bright line rule by unambiguously requiring a plaintiff alleging negligence to prove *present physical injury*. Here, plaintiffs cannot show that each land parcel in the 100-year flood plain is presently contaminated with pollution alleged to have originated from Dow's activities. Indeed, studies by the Michigan Department of Environmental Quality (DEQ) expressly show that some of the land is *not* contaminated. Because the owners of uncontaminated property do not have present physical injuries, they cannot allege negligence under Michigan law.

Accordingly, plaintiffs argue that even the uncontaminated properties suffer present injury in fact under a nuisance theory because they may become contaminated in the future. But Dow correctly argues that the purported injury in fact to many of these properties is too speculative to be recognized in Michigan.

To prove private nuisance, a plaintiff must show substantial interference with the use and enjoyment of his land. *Adkins v Thomas Solvent Co*, 440 Mich 293, 303-304; 487 NW2d 715 (1992).[2] Because a nuisance is a "nontrespassory invasion," a plaintiff need not show *physical* intrusion upon his land to prove nuisance. *Id.* at 302.

---

[2] Public nuisance, on the other hand, requires proof of an "unreasonable interference with a right common to all members of the general public." *Adkins*, 440 Mich at 304 n 8. Plaintiffs alleged both public and private nuisance theories.

5

There are countless ways to interfere with the use and enjoyment of land including interference with the physical condition of the land itself, disturbance in the comfort or conveniences of the occupant including his peace of mind, and threat of future injury that is a present menace and interference with enjoyment." [*Id.* at 303.]

Significantly, although nuisance may involve "'threatening or impending danger,'" *id.*, quoting *Kilts v Kent Co Supervisors*, 162 Mich 646, 651; 127 NW 821 (1910), a plaintiff cannot prove nuisance "where damage and injury are both predicated on unfounded fear of third parties that depreciates property values," *id.* at 312. "[P]roperty depreciation alone is insufficient to constitute a nuisance." *Id.* at 311.

Here, the facts presented by plaintiffs do not suggest that all or even most of the 2,000 proposed class members can allege cognizable nuisance claims. As noted, the DEQ reports that many parcels of land are not physically contaminated. Many more parcels have not even been tested, were never subject to flooding, and are very unlikely to experience flooding even during the next *century*. Crucially, the DEQ's restrictions apply *only* to *contaminated* or *frequently flooded* land—not to *all* land in the 100-year flood plain.[3] Because the class was defined on the sole

---

[3] The March 15, 2004, declaration of Andrew W. Hogarth, chief of the MDEQ's Remediation and Redevelopment Division, specifies that only "locations where dioxin concentrations exceed the residential direct contact criteria" are a designated "facility" for purposes of state restrictions on contaminated land, which include the requirement to inform potential buyers of dioxin contamination. He states that the DEQ also "believes" that property "subject to frequent flooding by the Tittabawassee River downstream of Midland is a facility." He avers that residents were specifically informed of these definitions in the DEQ's June 2003 Information Bulletin No. 3. As Dow observes, there is no evidence to suggest that

6

basis of the geographic boundaries of the 100-year flood plain, much of the circumscribed land has only a one percent chance of flooding in a given year. See *ante* at 3 n 1 (Young, J.). Moreover, the degree of risk of *contamination* from *future* flooding is questionable and somewhat speculative; Dow has already altered its activities and begun remediating past contamination of the river as was required, in part, by the DEQ.[4]

Accordingly, although some landowners may be able to allege present harm from nuisance, many residents of the flood plain certainly cannot. Indeed, the land that is not presently contaminated, that has a low risk of flooding in the future, and that has a largely speculative risk of actual contamination as a result of future flooding, is comparable to the land in *Adkins* where the plaintiffs sought damages based on diminished property values they alleged were caused by contamination in the surrounding area. These plaintiffs' land was not actually contaminated; a groundwater divide prevented the migration of toxic chemicals from the

---

uncontaminated property with a low likelihood of flooding in a given year is "subject to frequent flooding" or otherwise designated a "facility" by the DEQ's terms. Similarly, the DEQ's Information Bulletin No. 4, dated March 2004, identified precautions that residents of the flood plain could take "to reduce exposure to dioxins *from the identified areas of contamination*." (Emphasis added.) By their terms, these guidelines do not apply to uncontaminated soil.

[4] I also note, as the DEQ observed in its June 2003, Phase II Final Report, the presence of uncontaminated properties within the 100-year flood plain that are elevated above the flood level as a result of "local natural features or the introduction of clean fill material." Obviously these properties also have a low risk of future contamination from flooding.

surrounding land.  *Adkins*, 440 Mich at 299-300, 318.  The Court held that fear-based diminution in property values was an insufficient basis for relief, stating:

> Under such a theory, a cause of action could be stated on behalf of any individual who could demonstrate an effect on property values even if the polluted ground water had neither strayed from defendants' own property, nor disturbed a plaintiff's enjoyment by the fear that it would do so.
> If any property owner in the vicinity of the numerous hazardous waste sites that have been identified can advance a claim seeking damages when unfounded public fears of exposure cause property depreciation, the ultimate effect might be a reordering of a polluter's resources for the benefit of persons who have suffered no cognizable harm at the expense of those claimants who have been subjected to a substantial and unreasonable interference in the use and enjoyment of property. [*Id.* at 318-319.]

The very problem identified in *Adkins* is present here.  Plaintiffs argue that property values throughout the flood plain have been diminished in part as a result of DEQ warnings to residents concerning possible contamination and steps residents should take to avoid harmful exposure to dioxin-contaminated soil; residents were told, for example, that children and gardeners should avoid prolonged exposure to *contaminated* soil and that certain steps were required if residents wished to move or dispose of such soil.  But the DEQ itself *also* reported that various areas of the flood plain were *not* harmfully contaminated, and the state-promulgated restrictions applied only to contaminated or, at most, frequently flooded land.  Indeed, the depositions of some flood plain residents explicitly revealed that these residents were not directly affected by pollution and had not altered the use of their land in any way as a result of Dow's alleged polluting activities.  Thus, many proposed class members would be able to argue *at most*

8

that their property values decreased simply as a result of publicity concerning pollution of the Tittabawassee River in part due to this lawsuit. But this is precisely the sort of unfounded fear that the *Adkins* Court concluded could not underlie a nuisance claim. Finally, the 170 or so plaintiffs who moved for class certification risk the very problem identified in *Adkins*; by attempting to certify 2,000 class members, most of whom obviously had not yet chosen to participate in the suit and many of whom may not be able to allege damages from present injuries, the plaintiffs virtually guarantee both that Dow's resources will be stretched to defend uncognizable claims at the expense of those plaintiffs who suffer actual harm *and* that any fear-based diminution in property values throughout the flood plain will accelerate as a result of the overbroad class definition.[5] Indeed, not only does the proposed class definition incorrectly suggest that undamaged land is indeed damaged in some way, but the definition likely would suspend all flood plain residents' abilities to sell undamaged land throughout the pendency of this suit, which is already over six years old.

*Conclusion*

For these reasons, I conclude that the class proposed by plaintiffs is too broad and therefore is untenable. Significantly, it is not even clear that the trial

---

[5] Dow posits that the 100-year flood plain is too broad an area for a factfinder to conclude that *every* owner suffers a present, nonspeculative injury sounding in nuisance. Dow reasonably asks: why not the 1,000-year or 1 million-year flood plain? Conversely, plaintiffs would be more likely to properly define a geographically based class if they focused merely on the 10- or 20-year flood plain.

court intended to accept plaintiffs' broad proposed definition when it initially certified the class. I note that the October 21, 2005, order refers to two defining characteristics of the class, one largely geographic but the other apparently based on present injury: "Each member of the class lives in the area alleged to have been damaged. Each member of the class allegedly *suffered damages* as a result of the release of contaminates in the Tittabawassee River." (Emphasis added.) Accordingly, if the trial court again concludes on remand that class certification is appropriate, I would direct the court to explicitly limit any class definition to property owners who suffer present injuries.

Maura D. Corrigan
Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

GARY HENRY and ALL OTHERS
SIMILARLY SITUATED,

Plaintiffs-Appellees,

v                                                                   No. 136298

DOW CHEMICAL COMPANY,

Defendant-Appellant.

_____

KELLY, C.J. *(concurring).*

I fully agree with and sign the majority opinion in this case.  I write for the

sole purpose of responding to Justice Young's comments regarding the majority's

respect for the doctrine of stare decisis.  Justice Young repeats a claim that he and

Justices Corrigan and Markman have published numerous times this term[1] with

the same string of citations.[2]  The claim is that their colleagues who comprise the

---

[1] See, e.g., *Petersen v Magna Corp*, 484 Mich ___; ___ NW2d ___ (2009) (Markman, J., dissenting), decided July 31, 2009 (Docket Nos. 136542 and 136543); *Chambers v Wayne Co Airport Auth*, 483 Mich 1081 (2009) (Corrigan, J., dissenting); *Scott v State Farm Mut Auto Ins Co,* 483 Mich 1032 (2009) (Corrigan, J., dissenting); *Beasley v Michigan*, 483 Mich 1025 (2009) (Corrigan, J., dissenting); *Juarez v Holbrook*, 483 Mich 970 (2009) (Markman, J., dissenting).  Justice Young joined the dissenting statements in *Chambers*, *Scott*, *Beasley*, and *Juarez.*

[2] *Post* at 18 n 28.

majority in this case have been ignoring precedent. A review of the cases in the string cite serves to illustrate that the claim is simply false.

Justice Young claims that in *Vanslembrouck v Halperin*,[3] the Court ignored *Vega v Lakeland Hosps*.[4] However, *Vanslembrouck* is distinguishable from *Vega* because *Vega* determined that MCL 600.5851(1) is a savings provision, whereas *Vanslembrouck* held that MCL 600.5851(7) is a statute of limitations. Thus, these cases examined the effect of altogether different statutory provisions.

Justice Young also claims that in *Hardacre v Saginaw Vascular Services*,[5] the Court failed to follow *Boodt v Borgess Med Ctr*.[6] However, in *Hardacre*, the Court denied leave to appeal because the allegations in the plaintiff's notice of intent to file an action did not need to comply with *Boodt*. In *Hardacre*, the burden of explication of the standard of care was minimal.[7]

Nor did the Court ignore precedents with which it disagrees in *Sazima v Shepherd Bar & Restaurant*.[8] Justice Young claims that the Court failed to follow

---

[3] *Vanslembrouck v Halperin*, 483 Mich 965 (2009).

[4] *Vega v Lakeland Hospitals at Niles-St Joseph, Inc*, 479 Mich 243; 736 NW2d 561 (2007).

[5] *Hardacre v Saginaw Vascular Services*, 483 Mich 918 (2009).

[6] *Boodt v Borgess Med Ctr*, 481 Mich 558; 751 NW2d (2008).

[7] See *Roberts v Mecosta Co Gen Hosp* (*After Remand*), 470 Mich 679, 694 n 12; 684 NW2d 711 (2004).

[8] *Sazima v Shepherd Bar & Restaurant*, 483 Mich 924 (2009).

2

*Chrysler v Blue Arrow Transport Lines*.[9]  However, *Sazima* involved exceptions to the "going and coming" rule as set forth in *Camburn v Northwest School Dist*.[10] Thus, the Court was not bound by *Chrysler*.

Justice Young next claims the Court ignored *Smith v Khouri*[11] when it decided *Juarez v Holbrook*.[12]  However, in *Juarez*, it was undisputed that the trial court performed a reasonableness analysis in calculating the proper attorney fee award.  Therefore, a remand in light of *Smith* was unnecessary.

Likewise, Justice Young is incorrect in claiming that the Court failed to enforce *Thornton v Allstate Ins Co*[13] and *Putkamer v Transamerica Ins Corp of America*[14] in *Scott v State Farm*.[15]  In *Scott*, the Court of Appeals undertook a thorough analysis of the relevant no-fault jurisprudence and applied precedent as it has been understood for nearly 30 years.

---

[9] *Chrysler v Blue Arrow Transport Lines*, 295 Mich 606; 295 NW 331 (1940).

[10] *Camburn v Northwest School Dist*, 459 Mich 471, 478; 592 NW2d 46 (1999).

[11] *Smith v Khouri*, 481 Mich 519; 751 NW2d 472 (2008).

[12] *Juarez, supra*.

[13] *Thornton v Allstate Ins Co*, 425 Mich 643; 391 NW2d 320 (1986).

[14] *Putkamer v Transamerica Ins Corp of America*, 454 Mich 626; 563 NW2d 683 (1997).

[15] *Scott, supra*.

Finally, the Court did not fail to abide by *Rowland* in *Chambers v Wayne Co Airport Auth.*[16]  *Chambers* interpreted MCL 691.1406, while *Rowland* interpreted MCL 691.1404(1).  Thus, the cases dealt with different statutory provisions and the Court was not bound to extend *Rowland* to the statute at issue in *Chambers*.

In summary, the accusation that the Court has been ignoring precedent is incorrect.  Had other Justices been in the majority in some of the decisions complained about, they might well have extended existing precedent to a new area of the law.  But the refusal of those in the majority in this case to so extend precedent is quite different from a refusal on their part to apply it.  This is a distinction that Justices Young, Corrigan, and Markman would do well to concede.

Marilyn Kelly

---

[16] *Chambers*, *supra*.

STATE OF MICHIGAN

SUPREME COURT

GARY HENRY and ALL OTHERS
SIMILARLY SITUATED,

       Plaintiffs-Appellees,

v                                   No. 136298

DOW CHEMICAL COMPANY,

       Defendant-Appellant.

_____

WEAVER, J.

      I write this separate opinion with regard to the issue of my participation in this case.

      In preparation of my 2008 income taxes, it came to my attention that I own 108 shares of Dow Chemical, which I received through a recent inheritance. After I became aware of this information, I asked the Clerk of the Court, Corbin Davis, to notify the parties to this case. Below is a copy of the disclosure statement sent to the parties by Mr. Davis on April 15, 2009:

>       Justice Weaver has requested that I inform you of the following:
>
>       In preparation of her 2008 income taxes, it has come to Justice Weaver's attention that she now owns 108 shares in Dow Chemical, which she received through a recent inheritance. Justice Weaver has informed me that she did not own any Dow Chemical stock at the time she sat on this matter in a prior appeal. *Henry v Dow Chemical Co*, 473 Mich 63; 701 NW2d 684 (2005).

She has been informed that this stock is currently worth approximately $10.94 per share, thus making the total value of her stock $1,181.52. Pursuant to the Code of Judicial Conduct Canon 3(C):

"A judge should raise the issue of disqualification whenever the judge has cause to believe that grounds for disqualification may exist under MCR 2.003(B)."

MCR 2.003(B)(5) provides in part that a judge is disqualified when:

"The judge knows that he or she . . . has an economic interest in the subject matter in controversy or in a party to the proceeding or has any other more than de minimis interest that could be substantially affected by the proceeding."

Justice Weaver believes that the amount of stock she owns in Dow Chemical is not a "more than de minimis interest" that could be substantially affected by this proceeding.

She also states that she has no personal bias or prejudice for or against either party and, therefore, finds no need to recuse herself in this case. However, should either of the parties desire that she recuse herself, she is willing to do so.

Please advise me of your preference in this matter at your earliest convenience.

Justice Young also sent a separate statement to the parties expressing his disagreement with my decision to notify the parties in this manner. Both parties responded that they had no objection to my continued participation in this case.

I bring this issue to the public's attention because it is another example of why this Court needs fair, clear, written rules for disqualification concerning the participation or nonparticipation of Michigan Supreme Court justices. Since May 2003, I have repeatedly called for this Court to recognize, publish for public comment, place on a public hearing agenda, and address the need to have written, clear, fair, orderly, and public procedures

2

concerning the participation or disqualification of justices.[1] See, e.g., statement or opinion by Weaver, J., in *In re JK*, 468 Mich 202, 219-225; 661 NW2d 216 (2003); *Gilbert v DaimlerChrysler Corp*, 469 Mich 883 (2003); *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 472 Mich 91, 96-104; 693 NW2d 358 (2005); *McDowell v Detroit*, 474 Mich 999, 1000 (2006); *Stamplis v St John Health Sys*, 474 Mich 1017, 1017-1018 (2006); *Heikkila v North Star Trucking, Inc*, 474 Mich 1080, 1081 (2006); *Lewis v St John Hosp*, 474 Mich 1089, 1089-1090 (2006); *Adair v Michigan*, 474 Mich 1027, 1044-1051 (2006); *Grievance Administrator v Fieger*, 476 Mich 231, 328-347; 719 NW2d 123 (2006); *Grievance Administrator v Fieger*, 477 Mich 1228, 1231-1271 (2006); *People v Parsons*, 728 NW2d 62, 62-65 (2007); *Ruiz v Clara's Parlor, Inc*, 477 Mich 1044 (2007); *Neal v Dep't of Corrections*, 477 Mich 1049, 1049-1053 (2007); *State Auto Mut Ins Co v Fieger*, 477 Mich 1068, 1070-1071 (2007); *Ansari v Gold*, 477 Mich 1076, 1077-1079 (2007); *Short v Antonini*, 729 NW2d 218, 219-220 (2007);

---

[1] Justice Young now asserts that he feels an "ethical obligation" to raise questions about the manner in which I have handled the issue of my participation in this matter. *Post* at 2 n 1. However, I again note that since 2003, I have raised the issue of the need for clear, written, and fair disqualification rules for Michigan Supreme Court justices, but the "majority of four" (Justice Young, along with Justices Corrigan and Markman and former Chief Justice Taylor) refused to address the issue until 2006, when this Court worked on the issue of disqualification, and the "majority of four" refused to publish the proposed disqualification rules formulated by members of this Court.

In March of this year (2009), after former Chief Justice Taylor's removal from this Court as a result of his overwhelming defeat in the 2008 election, the "remaining three" (Justice Young, along with Justices Corrigan and Markman) voted against publishing proposed rules for disqualification. Fortunately, this year, a majority voted in March 2009 to publish for public comment until August 1, 2009, the three proposals for rules of disqualification to be considered at a public hearing later in 2009.

*Flemister v Traveling Med Services, PC*, 729 NW2d 222, 223-225 (2007); *McDowell v Detroit*, 477 Mich 1079, 1084-1086 (2007); *Johnson v Henry Ford Hosp*, 477 Mich 1098, 1099-1100 (2007); *Tate v Dearborn*, 477 Mich 1101, 1102-1103 (2007); *Dep't of Labor & Economic Growth v Jordan*, 480 Mich 869, 869-873 (2007); *Cooper v Auto Club Ins Ass'n*, 739 NW2d 631, 631-633 (2007); and *Citizens Protecting Michigan's Constitution v Secretary of State*, 482 Mich 960, 962-964 (2008).

Elizabeth A. Weaver

STATE OF MICHIGAN

SUPREME COURT

GARY HENRY and ALL OTHERS
SIMILARLY SITUATED,

        Plaintiffs-Appellees,

v                                       No. 136298

DOW CHEMICAL COMPANY,

        Defendant-Appellant.

_____

YOUNG, J.

I write separately to respond to Justice Weaver's separate concurrence.

It would appear from Justice Weaver's separate opinion that I opposed the communication of her late-discovered ownership interest in one of the parties. She states: "Justice Young also sent a separate statement to the parties expressing *his disagreement with my decision to notify* the parties in this manner." *Ante* at 2 (emphasis added). This is patently untrue, as Justice Weaver knows. What I challenged was the *inadequacy* of her disclosure to the parties concerning the nature of her ownership of stock in Dow Chemical. For example, she did not disclose when she actually became the legal owner of stock in Dow Chemical or precisely when she discovered she had this ownership interest. Moreover, she did not disclose the basis for her unilateral determination that her ownership interest is not a "more than de minimis interest" or *why any ownership interest*

*was not itself disqualifying.* In order to ensure that the context of my criticism of her disclosure is provided, I am publishing my own communication to the parties below.

I continue to question Justice Weaver's participation in this case.[1] I believe that *any* ownership interest in a party precludes a judge's participation. MCR 2.003(B)(5) provides that a judge is disqualified when "[t]he judge knows that . . . she . . . has an economic interest in . . . a party to the proceeding or has any other more than a de minimis interest that could be substantially affected by the proceeding." This court rule is written in the disjunctive, which distinguishes an economic interest in a party from every other type of potentially disqualifying interest. Only those "other" types of interests contain an exception for de minimis interests. Without doubt, Justice Weaver has an "economic interest in . . . a party" in this proceeding.

This qualitative distinction made in MCR 2.003(B)(5) between economic interests and other interests is similarly found in the nearly identical federal statute regarding judicial recusal.[2] 28 USC 455(b)(4) disqualifies a federal judge from sitting in a case if

---

[1] While, consistent with my previous practice, *Adair v Michigan*, 474 Mich 1027, 1052 (2006) (statement of Young, J.), I do not "vote" on Justice Weaver's disqualification in this case, I believe I do have an ethical obligation to raise questions about her decision. I note that, contrary to their participation in *United States Fidelity Ins & Guaranty Co v Michigan Catastrophic Claims Ass'n*, ___ Mich ___ order of the Supreme Court, entered July 21, 2009 (Docket Nos. 133466 and 133468), where the Chief Justice and Justice Cavanagh concurred in and signed Justice Hathaway's decision to participate, here they have not joined in Justice Weaver's decision to participate. I have no idea why these justices have chosen to vote on the disqualification in the one case but have declined to do so in this instance.

[2] Compare 28 USC 455(b)(4), which provides that a judge shall disqualify himself when "[h]e knows that he . . . has a financial interest in the subject matter in controversy

2

he or she "has a financial interest in the subject matter in controversy . . . ." The statute

defines "financial interest" as "ownership of a legal or equitable interest, however small."

28 USC 455(d)(4). The United States Court of Appeals for the Tenth Circuit has

determined that the federal statutory scheme

> differentiates between two kinds of interests. If the judge has direct
> ownership, legal or equitable, then disqualification is required regardless of
> the size of the interest, unless one of the specified exceptions applies. On
> the other hand, an interest not entailing direct ownership falls under "other
> interest," and requires disqualification only if the litigation could
> substantially affect it.[3]

Furthermore, the leading commentators on federal practice and procedure indicate that

this statutory provision

> eliminate[s] any dispute about the substantiality of a financial interest. If a
> judge, or any other person within the statutory language, has *any* financial
> interest, as that term is defined, however small, in a party or in the subject
> matter in controversy, the judge must recuse. There is no room for
> discretion.[4]

Under MCR 2.003(B)(5) there was no discretion here for Justice Weaver's continued

participation.

---

or in a party to the proceeding, or any other interest that could be substantially affected
by the outcome of the proceeding," with MCR 2.003(B)(5), which provides that a judge
is disqualified when "[t]he judge knows that he . . . has an economic interest in the
subject matter in controversy or in a party to the proceeding or has any other more than
de minimis interest that could be substantially affected by the proceeding." The federal
statute was enacted in 1948 and the Michigan court rule was amended in 1995 in light of
the 1990 ABA Model Code of Judicial Conduct, which, in pertinent part, was taken from
the federal statute.

[3] *In re New Mexico Natural Gas Antitrust Litigation*, 620 F2d 794, 796 (CA 10,
1980). This is the *same* distinction made in MCR 2.003(B)(5).

[4] Wright and Miller, 13D Federal Practice and Procedure (3d ed), § 3546, pp 76-
78 (emphasis in original; citations omitted).

My Statement to the Parties

My response, also communicated to the parties, challenging Justice Weaver's disclosure to the parties concerning her stock ownership is restated here as follows:[5]

> In light of her repeated public statements regarding standards for recusal, I regret that Justice Weaver has placed the parties in the awkward position of having to decide whether she will take part in the decision of this case notwithstanding her acknowledged financial interest as an investor in the defendant corporation. I ask that the following public information regarding Justice Weaver's stated positions on recusal be taken into consideration in making a decision on her request for remittal.
>
> While I have publicly supported the Court's more than a century old recusal policy,[2] Justice Weaver has been equally publicly critical of that longstanding policy in suggesting that she subscribes to a "higher" standard.[3]
>
> Nevertheless, Justice Weaver claims that her ownership of approximately $1,200 in defendant Dow's stock is "not a 'more than de minimis interest.'" She has made this determination herself, which is contrary to her repeated public statements on the question of judicial recusal.[4]
>
> For example, in this Court's March 18, 2009 order on ADM 2009-04 (Proposed Disqualification Rules for Justices), Justice Weaver reiterated her 2006 statement on disqualification and explained that "[i]t is a most basic truth that the person who may be the least capable of recognizing a justice's actual bias and prejudice, or appearance of bias and prejudice, is the justice h[er]self."[5] Presumably consistent with that sentiment, she recused herself in *Kyser v Kasson Twp*, "because she has a past and current business relationship with Kasson Township Supervisor Fred Lanham and his family."[6]
>
> Moreover, Justice Weaver has advocated a disqualification standard that requires judges to recuse themselves if there is merely an *appearance* of impropriety. She has cited with approval Canon 2 of the ABA Model Code of Judicial Conduct, which states that "[a] judge shall avoid . . . the appearance of impropriety in all of the judge's activities" and Model Canon

---

[5] My communication to the parties begins with endnote 2 because Justice Weaver's communication contained one citation and the citations were numbered continuously. Additionally, all citations in the communication have been converted to this Court's standard format.

4

3(E)(1), which states that a judge "shall disqualify . . . herself in a proceeding in which the judge's impartiality might reasonably be questioned."[7]

The disqualification standard that she has publicly championed is an *objective* standard, not a subjective standard to be determined by her say-so. Justice Weaver's "appearance of impropriety" standard is made without regard to whether an individual judge harbors an *actual* bias toward any party in the case being heard:

"[W]hen a judge recuses . . . herself to avoid the appearance of impropriety, the result is that the judge avoids *risking* actual bias. Second, when a judge recuses . . . herself, the judge eliminates the *appearance* of impropriety and thereby engenders public confidence in the judiciary."[8]

Accordingly, if her support of the "appearance of impropriety" standard is genuine – and I assume that she would not have advocated it otherwise – her *personal* belief that she "has no personal bias or prejudice for or against either party" and that the total value of her stock is "not more than a de minimis interest" is irrelevant to whether she must recuse herself.

Moreover, Justice Weaver has advocated in her various published statements on disqualification standards that the disqualification decision cannot be solely vested in the judge who is the subject of disqualification but must be reviewed by other members of the Court.[9]

Here, Justice Weaver has made her own determination that her Dow stock ownership is "de minimis" within the meaning of MCR 2.003(B)(5). But there is no basis upon which an objective observer can assess the validity of her claim and decision. Context is essential in considering what level of ownership in a party litigant is "de minimis," and no one but Justice Weaver is privy to her financial status – something she has chosen not to share.

My point here is that Justice Weaver's request for remission is entirely inconsistent with her published views on what standards *ought* apply in recusal situations. Her ownership of stock in a party defendant <u>does</u> pose an *appearance* of impropriety from the standpoint of the public.[10] Can anyone imagine the public at large believing that it is perfectly appropriate for a judge to decide a case in which she owns stock in one of the parties?[11] Moreover, her communication – which states her conflict, announces that her conflict does not matter, and asks the parties to agree with her – is inherently intimidating and coercive to both parties involved in this litigation.[12] Rejection of her stated premise – that, notwithstanding her stated conflict, she should participate in the case – obviously puts the parties in the position of offending a sitting Justice. By her own stated

5

positions on recusal, she should not be putting the parties in the position of having to bless an *appearance* of impropriety.

Finally, the nature of Justice Weaver's private communication with the parties does not comport with her conclusion that the Michigan Constitution, art 6, § 6, "requires that a justice's self-initiated decision and reasons not to participate, or a challenged justice's decision and reasons to participate or not participate, should be in writing and *accessible to the public*."[13] It would seem to me that, under her proposed regime, Justice Weaver's discussion of her stock ownership should be published for public review.

Again, I wish to state that I believe that our historic disqualification policy is constitutionally sound and should be embraced by all members of this Court. Since it has not been, and since Justice Weaver has articulated her own, purportedly "higher" recusal standards, I am left to wonder why Justice Weaver advocates a public position contrary to the position she practices and why she believes it appropriate that the parties should be asked to bless her conflict.

---

[2] "In short, a justice confronted with a disqualification motion has typically consulted with members of the Court and made a determination whether participation in a particular matter was appropriate. Other than providing counsel, other members of the Court have not participated in the decision." Order of the Michigan Supreme Court, March 18, 2009, p 33 ("March 18, 2009 order") ADM 2009-04 (statement of Young, J.). See also *Adair v State of Michigan*, 474 Mich 1027, 1052 (statement of Young, J.).

[3] See, e.g., March 18, 2009 order, *supra* at 9 n 1 (statement of Weaver, J).

[4] So far as I am aware, Justice Weaver did not consult with any member of this Court before announcing her position.

[5] March 18, 2009 order, *supra* at 14.

[6] *Kyser v Kasson Twp* [483 Mich 903 (2009) (order denying leave)] and [483 Mich 983 (2009) (order vacating denial order and granting leave)]. Justice Weaver did not disclose the nature of her "business relationship" that warranted her recusal.

6

[7] See *Adair v State of Michigan*, 474 Mich 1027, 1047 (2006) (statement of Weaver, J.). Justice Weaver does not subscribe to my view that, because Justices cannot be replaced on a case by case basis, a different rule of disqualification must apply to Justices. See *id.* at 1044-45. On the contrary, she advocates that a disqualified Justice *can* be replaced in such a case.

[8] *Id.* (Emphases added.) Justice Weaver claims that she "has no personal bias or prejudice for or against either party . . . ." Nevertheless, her lack of *actual* bias in this case is irrelevant under her disqualification standard to the question whether the participation of a judge who has an ownership interest in a litigant creates an *appearance* of impropriety.

[9] March 18, 2009 order, *supra* at 13-14. This, of course, is one of the issues pending in *Caperton v Massey*, United States Supreme Court Docket No. 08-22, where it is claimed that due process requires that a recusal issue must be decided by someone other than the judge who is the subject of potential disqualification.

[10] Indeed, Congress has made this very policy judgment. 28 USC 455(b)(4) disqualifies a federal judge from sitting in a case if he or she "has a financial interest in the subject matter in controversy." The statute defines "financial interest" as "ownership of a legal or equitable interest, however small." 28 USC 455(d)(4). While this federal statute is not controlling here as our disqualification rule for Michigan judges permits a "de minimis" financial interest, it does provide support for the proposition that even a small financial stake in a party litigant creates an appearance of impropriety.

[11] As stated, Justice Weaver provides the parties with no basis upon which to evaluate her request for remission.

[12] I am aware that this procedure is specifically contemplated by MCR 2.003(D). Nevertheless, if Justice Weaver's standard for recusal is the *appearance* of impropriety, then submitting this question to the parties becomes moot and is inherently aimed at coercing the parties to accept her participation *notwithstanding* the appearance of impropriety.

[13] *Adair*, 474 Mich at 1050 (statement of Weaver, J.) (emphasis added).

Robert P. Young, Jr.